Gaylord HOBBS, Plaintiff,

v.

The BUCKEYE UNION CASUALTY COMPANY, Defendant and Third-Party Plaintiff,

v.

CELINA MUTUAL INSURANCE COMPANY, Third-Party Defendant.

Civ. A. No. 930.

United States District Court
W. D. Virginia,
Abingdon Division.

Dec. 22, 1962.

Dick B. Rouse and Francis W. Flannagan, Bristol, Va., for Gaylord Hobbs.

G. R. C. Stuart, of Penn, Stuart & Stuart, Abingdon, Va., for Buckeye Union Casualty Co.

Donald T. Stant, of Stant & Roberts, Bristol, Va., for Celina Mut. Ins. Co.

DALTON, Chief Judge.

This dispute originates with an automobile accident. Much of the difficulty surrounding it emanates from the legal relationships created by Virginia's relatively new Uninsured Motorist Law. (Va.Code Ann. § 38.1–381.) The facts of the case are as follows:

On April 19, 1961, the plaintiff, Gaylord Hobbs, was a paying passenger in a car owned and operated by one Carl McCroskey when it collided in Washington County, Virginia, with another car driven by an unknown motorist, hereinafter designated John Doe. Hobbs suffered extensive injuries and instituted suit in the Circuit Court of Washington County against both Carl McCroskey and the unknown and, therefore, presumably uninsured motorist, John Doe. (Va.Code Ann. § 38.1–381(c).) In that action Hobbs obtained a $12,000.00 judgment against McCroskey and John Doe as joint tort feasors.

 Two insurance companies became involved as a result of the accident: The present third-party plaintiff, Buckeye Union Casualty Company, had issued a liability policy to Carl McCroskey, and the present third-party defendant, Celina Mutual Insurance Company, had issued a liability policy to Gaylord Hobbs. Buckeye, therefore, was of course responsible for any liability incurred by Carl McCroskey. And, since both policies were issued in Virginia and therefore contained the required uninsured motorist provisions, both Buckeye and Celina were responsible at the time of the accident to Hobbs for any amount which he should become legally entitled to recover from the unknown motorist, John Doe. (Va.Code Ann. § 38.1–381(b)) Buckeye offered Hobbs such coverage because he was riding in the insured automobile.[1] Celina offered Hobbs such uninsured motorist coverage because he was a named insured or a spouse of the named insured living in the same household, and thus insured 24 hours a day against in-

---

[1]. Although it is true that Va.Code Ann. § 38.1–381(c) used the words "guest in such motor vehicle to which the policy applies", which might be construed to preclude coverage of paying passengers, Buckeye's policy does not employ such limiting language and merely defines an insured in this class as "any other person while occupying an insured automobile". Therefore the fact that Hobbs was a paying passenger can make no difference in determining Buckeye's uninsured motor-coverage regarding him. See 47 Va.L.Rev. 158 (1961), note 67.

jury from uninsured motorists.[2] Therefore it seems clear that at the time of the accident *both* Buckeye and Celina carried valid coverage regarding any legally determined liability on the part of John Doe to Gaylord Hobbs. As we have said, Buckeye of course carried valid liability coverage on Carl McCroskey.

■ Moreover, it appears from the Circuit Court record that both Buckeye and Celina were actually served with a copy of the notice of motion for judgment in the manner prescribed by law and were *both* therefore possessed of the right at the outset of the suit to file pleadings and take other action allowable by law in the name of John Doe. (Va. Code Ann. § 38.1–381(e) and (e) (1).) See State Farm Mutual Automobile Ins. Co. v. Duncan, 203 Va. 440, 125 S.E.2d 154 (1962). Therefore, although apparently only Celina did file pleadings and defend the claim against John Doe, and Buckeye was active in the suit only in defense of Carl McCroskey, it appears that *both* these companies remained responsible for John Doe's liability to Hobbs as it was legally determined in the Circuit Court action. However, as will be seen later, whether this assumption is correct or not, does not materially affect the Court's holding in the present controversy.

■ Following the Circuit Court judgment, execution was issued against Carl McCroskey and returned unsatisfied. And pursuant to Va.Code Ann. § 38.1–380, Hobbs instituted suit in the Circuit Court against Buckeye for full payment of the $12,000.00 judgment based on Buckeye's contract of insurance with McCroskey. Buckeye immediately removed to this Court and impleaded Celina under Rule 14 of the Federal Rules of Civil Procedure on the ground that Celina covered the joint tort feasor, John Doe, and would, therefore, be subject to contribution to Buckeye after Buckeye paid the $12,000.00 judgment to Hobbs. Buck-

eye then paid the plaintiff Hobbs his $12,000.00, and the issue before this Court is whether or not Buckeye is entitled to contribution from Celina for some part of the $12,000.00 payment.

Before reaching that point, however, it should be noted that Celina's contention that Buckeye's payment to Hobbs destroyed both diversity and amount jurisdiction is not well founded since the jurisdiction of this Court over the entire controversy was determined in the suit by Hobbs against Buckeye, and, having uncontroverted jurisdiction of that suit, we need no independent grounds of jurisdiction to entertain and determine the defendant's ancillary third-party claim. See Barron and Holtzoff, Federal Practice and Procedure, Vol. 1A, at 650.

■■ Turning now to the central issue to be decided by this Court, which is whether Buckeye, having stepped into the shoes of McCroskey through its $12,000.00 payment to Hobbs, is entitled to contribution from Celina for any part of that payment. There is no doubt that contribution between wrongdoers may be enforced in Virginia so long as the wrongful act involves no moral turpitude. (Va.Code Ann. § 8–627.) Moreover, it has been held in Virginia that the insurer of one joint tort feasor which has paid the injured party may compel contribution from the insurer of another joint tort feasor. American Employers Insurance Co. v. Maryland Casualty Co., 218 F.2d 335 (4th Cir., 1954). Therefore, if Celina were the insurer of John Doe, Buckeye could undoubtedly compel contribution. But Virginia's uninsured motorist law does *not* create insurance for uninsured motorists! State Farm Mutual Automobile Insurance Co. v. Drewry, 191 F.Supp. 852 (W.D.Va.1961); Nationwide Mut. Ins. Co. v. Harleysville Mut. Cas. Co., 203 Va. 600, 125 S.E.2d 840 (1962). It is primarily concerned with providing adequate compensation for injured insureds when other sources

---

2. Whether McCroskey had transferred the policy to his wife's name prior to the accident, as Celina contends, would make no difference regarding uninsured motorist coverage under the Virginia Code definition of an insured, which in this case is the one adopted by the policy. Va.Code Ann. § 381.1–381(c).

are lacking. As the Virginia Supreme Court of Appeals said in the Nationwide case, supra, at 603, 125 S.E.2d, at 843:

"The intent of the General Assembly in enacting the "Uninsured Motorist Act," was to provide benefits and protection against peril of injury by an uninsured motorist to an insured motorist, his family and permissive users of his vehicle. It was not enacted to provide insurance coverage upon each and every uninsured vehicle to everyone."

Furthermore, the Virginia Supreme Court of Appeals has discussed the relationship of insurer to uninsured motorist in connection with facts pertinent to the present controversy. In Horne v. Superior Life Insurance Company, 203 Va. 282, 123 S.E.2d 401 (1962) the issue revolved around the right of a workmen's compensation carrying employer to recover through subrogation from an employee's uninsured motorist insurance carrier, who of course bore the same relationship to the negligent, uninsured third party who caused the employee's injury as Celina bears to John Doe in this case. In holding that no recovery could be had the court said at 285, 123 S.E.2d at 404:

"The precise issue is one of first impression. It is not the purpose of the uninsured motorist law to provide coverage for the uninsured vehicle, but its object is to afford the insured additional protection in the event of an accident. Here, Aetna [the uninsured motorist carrier] does not stand in the shoes of Washington, the uninsured motorist. *Its policy does not insure Washington against liability. It insures [those]* * * * *protected under the policy against inadequate compensation.* Aetna's liability to its insured is contractual, even though it is based upon the contingency of a third party's tort liability, and [the] employ-

er, Superior, does not become a third party beneficiary under the insurance contract." (Emphasis and comment added.)

If any further proof were needed that there was no intent in the Virginia law to create insurance for uninsured motorists, it is to be found within the act itself. For Va.Code Ann. § 38.1–381(f) specifically allows legal action by any insurance company which provided compensation for injury resulting from an uninsured motorist's negligence against the uninsured motorist himself.

■ If Celina is not an insurer of John Doe, as we have seen it is not, what then is the nature of the insurance company's relationship to that fictional entity? It would seem that the delineation of contingent surety would be closer to the mark. The company for consideration has promised to compensate its insured for any injuries suffered as a result of John Doe's operation of an automobile, so long as Doe's legal liability to the insured Hobbs is established. (Va.Code Ann. § 38.1–381(b).) It should be noted that for reasons stated earlier Buckeye was under an identical obligation to Hobbs as well and that *both* these companies must be considered contingent co-sureties, if that is a proper description for this legislatively created relationship, for John Doe's liability to Hobbs, with Buckeye wearing the additional hat of liability insurer, in the conventional sense, of the joint tort feasor, McCroskey.

■ Viewed in this light, the present controversy readily resolves itself. For Buckeye, the claimant, is asserting its claim from the shoes of Carl McCroskey, the joint tort feasor, having been subrogated to that position by virtue of the $12,000.00 payment to Hobbs.[3] From those shoes it would have a right under Va.Code Ann. § 8–627 to compel contribution from John Doe, the joint tort feasor, if he could be found, or from

3. Hobbs signed release of Buckeye recites that "This payment is made *pursuant to the liability coverage* of the insurance poli-

cy, No. FF 111058, issued by The Buckeye Union Casualty Company to Carl McCroskey." (Emphasis added.)

John Doe's liability insurer, which is presumably non-existent. From those shoes it does not have any right to compel payment of monies which were promised as compensation to the very party who was injured by McCroskey's negligence. And this is doubly true since Buckeye in its own right had made a promise to compensate the injured party in precisely the same manner and under the same conditions as Celina. The fact that the injured party has been compensated for his injuries from another source and has no need to enforce either promise would seem to render them at an end. But even if this were not true, certainly the party responsible for the injuries could not demand such compensation. Nor may one standing in the shoes of that party.

The Uninsured Motorist Act has been and doubtless will continue to be the source of much litigation in Virginia. The underlying theory of the Act, as above stated, is to afford protection—not to the uninsured motorist—but to provide additional protection to the insured motorist in the event of an accident. In this case, Buckeye was not only the public liability insurance carrier on the McCroskey car, but also had issued an Uninsured Motorists endorsement protecting McCroskey, and "any other person while occupying an insured automobile" from damage by an uninsured motorist.

Celina (Hobbs uninsured motorist carrier) had contracted to protect Hobbs under the customary uninsured motorist endorsement, Clause 6 of which contract provides:

"With respect to bodily injury to an insured while occupying an automobile not owned by the named insured under this endorsement, the insurance hereunder shall apply only as excess insurance over any other similar insurance available to such occupant, and this insurance shall then apply only in the amount by which the applicable limit of liability of this endorsement exceeds the sum of the applicable limits of liability of all such other insurance."

Thus, it is obvious to the Court that Buckeye carried primary coverage on the McCroskey car for the benefit of Hobbs, an occupant of the McCroskey automobile, to the limit of $15,000.00. In other words, the car in which Hobbs was riding not only was first liable under its public liability coverage, but was also first liable under the uninsured motorist endorsement. By the very terms of Clause 6, the insurance of Celina applied only as excess insurance over other similar insurance available to the occupant. Buckeye's insurance was not only available in the limits prescribed but was collected, and there is no ground on which to collect contribution from Celina.

Therefore, for the reasons stated above, the Court holds The Buckeye Union Casualty Company is not entitled to any contribution whatever from Celina Mutual Insurance Company.