Fred **PULLEY**, Plaintiff,

v.

**ALLSTATE INSURANCE COMPANY**
**and the Travelers Indemnity Com-**
**pany, Defendants.**

Civ. A. No. 4306.

United States District Court
E. D. Virginia,
Norfolk Division.

June 4, 1965.

4. Whitehall Cement Mfg. Co. v. United States, 237 F.Supp. 838, 844 (E.D.Pa.1965).

Bangel, Bangel & Bangel, Stanley J. Bangel, Portsmouth, Va., for plaintiff.

White, Ryan & Reynolds, Allan S. Reynolds, Norfolk, Va., for Allstate Ins. Co.

Seawell, McCoy, Winston & Dalton, Harry E. McCoy, Norfolk, Va., for Travelers Indemnity Co.

WALTER E. HOFFMAN, Chief Judge.

The facts, stipulated by counsel in this case, are not in dispute.

Plaintiff, Pulley, obtained a judgment on March 4, 1963, in the Circuit Court of the City of Portsmouth, Virginia, for the sum of $22,500.00, plus interest and costs, against Samuel Edward Tillman and Stephen Thomas Reavis. Plaintiff was a passenger in an automobile operated by Reavis and was injured when the car in which he was riding collided with an automobile operated by Tillman.

The automobile operated by Reavis was owned by Empire Motors, Incorporated, an automobile dealership in Portsmouth. The vehicle was a demonstrator in the care and custody of Carlton Russell, a salesman employed by Empire Motors. Plaintiff, Pulley, was likewise employed by Empire Motors as a mechanic

Plaintiff and Russell had a private agreement with Russell, the salesman, to the effect that if plaintiff referred any prospects to Russell, and a sale of an automobile resulted, then plaintiff and Russell would share the commission paid to Russell by Empire Motors. Plaintiff and Reavis, the operator of the automobile owned by Empire Motors, were friends and had married sisters.

On the night of May 10, 1962, Reavis visited Empire Motors after the salesroom had closed for the night. He talked with plaintiff who was working overtime repairing a customer's automobile. Reavis expressed interest in buying a new automobile. After plaintiff completed his work on the customer's car he took Reavis to the home of the salesman, Russell, where Reavis and Russell negotiated a sale of a new car to Reavis, based on a trade-in allowance for an old automobile and Reavis borrowing the money to complete the transaction from a credit union at the company where Reavis was employed. Reavis requested permission to drive the demonstrator owned by Empire Motors, which vehicle Russell, the salesman, had at his home. Russell had not finished his dinner and, therefore, requested the plaintiff to ride with Reavis for the purpose of explaining any details of the vehicle which was a foreign-make automobile. It was under these circumstances that Reavis was driving and plaintiff was a passenger in the foreign-make car when it collided with the automobile operated by Tillman.

Reavis carried automobile liability insurance on his personally owned vehicle with Allstate Insurance Company under Policy No. 18,676,144,2–28, which policy was in full force and effect at the time of the accident.

The Travelers Indemnity Company had issued to Empire Motors its Garage Liability Policy No. FG 5569900, together with endorsements 1721A(A164) and 4187A attached thereto, which said policy was in full force and effect at the time of the accident. The endorsements in question had been approved by the Bureau of Insurance, State Corporation Commission of Virginia. The plaintiff and Allstate Insurance Company, while admitting the foregoing facts, contend that the endorsements are irrelevant to the issues in this case and are, therefore, inadmissible. Endorsement 1721A (A164) was approved by the Commissioner of Insurance by order dated October 24, 1961 (Docket No. 2399), as an addition to Rule 52 which became a standard policy form in Virginia under the terms of the Virginia State Corporation Commission Administrative Order No. 6677, effective and applicable to all new and renewal policies written on or after November 15, 1961. Both the Allstate Insurance Company and The Travelers Indemnity Company are members of the Virginia Automobile Rate Administrative Bureau and received the bulletins and publications of that Bureau, including its Bulletin 292 of November 7, 1961, which called attention to the addition to Rule 52 as follows:

"H. Limited Coverage—Customers. The bodily injury and property damage coverage may be limited with respect to customers in accordance with the applicable endorsement. When such coverage is so limited, the policy bodily injury and property damage premium and minimum premium shall be reduced 5%. The discount shall not apply to other coverages, and those premiums which are calculated as a percentage of the bodily injury or property damage premium shall be determined prior to the application of the aforementioned discount."

As previously noted, plaintiff and Allstate Insurance Company object to any consideration of the endorsements attached to the Garage Liability Policy issued by Travelers on the ground that said endorsements, as applied to the facts of this case, are contrary to Virginia law and are, therefore, irrelevant.

The Travelers Indemnity Company likewise issued a Workmen's Compensation Policy to Empire Motors and, as of September 9, 1963, had paid benefits to and for the plaintiff herein to the extent

of $4557.55. Other benefits may have been paid since that date.

Samuel Edward Tillman, the operator of the other vehicle involved in the collision, was an uninsured motorist who carried no liability insurance on his vehicle.

At the state court trial in which plaintiff obtained his judgment against both Reavis and Tillman, Reavis was represented and defended by Allstate. Tillman was defended by Travelers under Endorsement 4187A and its policy, issued to Empire Motors. The present action is to enforce the collection of the judgment and, *inter alia,* to determine the rights of the parties.

Plaintiff contends that he is entitled to the satisfaction of his judgment from either and/or both defendants herein. He further argues that Travelers is not entitled to reimbursement for benefits paid under the Workmen's Compensation Act but, if in error on this point, said benefits so reimbursed to Travelers should be subject to an attorney's fee in favor of plaintiff.

Allstate, with a limit of coverage in the sum of $15,000.00 (subject to further provisions with respect to interest and costs), submits that Travelers is primarily liable for the payment of any judgment against Reavis and that, even if Allstate is liable for the judgment against Tillman, it is liable for less than the total judgment.[1]

Travelers, relying upon its Garage Liability Policy with endorsements attached, contends that it owed no coverage to Reavis; that the only coverage owed to anyone arose from the uninsured motorist endorsement No. 4187A attached to said policy, and that plaintiff was a beneficiary of this endorsement and, by reason of Allstate's coverage afforded, there is no liability upon Travelers because the uninsured motorist endorsement only permits a beneficiary thereunder to collect a judgment not exceeding $15,000.00 and that, in any event, Travelers (while denying any liability) would be liable only for the difference between Allstate's coverage of $15,000.00 and the total amount of the judgment; that any amount found to be due by Travelers under the uninsured endorsement must be reduced by the benefits paid under the Virginia Workmen's Compensation Act but, even if not deductible, Travelers holds a lien against plaintiff's judgment to the extent of the benefits paid.

The multiple questions presented have been fully argued and briefed. Allstate's liability, if any, is occasioned by reason of it having issued a liability policy to Reavis on his personally owned automobile (not involved in the accident), which said policy included an uninsured motorist provision as required by Virginia law. Traveler's liability, if any, is derived from two sources, namely, (1) as the insurer of the automobile operated by Reavis with the express permission of the named insured, and (2) under the uninsured motorist endorsement if the same is applicable. Allstate, to the extent and subject to the conditions of its policy issued to Reavis, is also liable with respect to the operation of the Empire Motors automobile by Reavis under the non-owned automobile clause.[2]

Under Allstate's policy issued to Reavis, uninsured motorist protection is afforded under "Part 4—Uninsured Motorists—Coverage S—Uninsured Motorists (Damages for Bodily Injury)" reading as follows:

"To pay all sums which the insured or his legal representative shall be legally entitled to recover as dam-

---

1. The limit of coverage referred to as being $15,000.00 has reference to Allstate's potential liability under the uninsured motorist provision of the policy. Possible excess coverage liability under the non-owned automobile provision is considered elsewhere.

2. Allstate's liability for the operation by Reavis is stated in Allstate's policy to be "excess insurance over any other valid and collectible insurance" with reference to the non-owned automobile. The discussion of "other insurance" as pertains the uninsured motorist provision is contained elsewhere.

ages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the insured, caused by accident arising out of the ownership, maintenance or use of such uninsured automobile. * * * "

The term "insured" as used above is defined to include the named insured, any relative of the named insured, and "any other person while occupying an insured automobile." The term "insured automobile" is defined to include "any automobile not owned by the named insured while being operated by the named insured."

■ As Reavis was operating an automobile owned by Empire Motors with the permission of the latter, and since the plaintiff was an "other person while occupying an insured automobile", plaintiff became an "insured" under the uninsured motorist provision of the policy and Allstate agreed to pay the plaintiff such sum (subject to the limits of coverage) which the "insured" (plaintiff herein) was legally entitled to recover as damages from the owner or operator (Tillman) of the uninsured automobile.

However, Allstate points to a further provision of its policy referring to "Other Insurance" under the "Protection Against Uninsured Motorists" which reads:

"With respect to bodily injury to an insured while occupying an automobile not owned by the named insured the insurance hereunder shall apply only as excess insurance over any other similar insurance available to such occupant, and this insurance shall then apply only in the amount by which the applicable limit of liability of this Part exceeds the sum of the applicable limits of liability of all such other insurance.

\* \* \* \* \* \*

"Subject to the foregoing paragraphs, if the insured has other similar insurance available to him

against a loss covered by this Part, the company shall not be liable under this Part for a greater proportion of such loss than the applicable limit of liability hereunder bears to the total applicable limits of liability of all valid and collectible insurance against such loss."

■ If, of course, Reavis was insured by reason of Travelers' policy issued to Empire Motors, it is well settled by the terms of the policy that Allstate's policy is applicable only as excess insurance as pertains to Reavis' liability. North River Ins. Co. v. Connecticut Fire Ins. Co., W.D.Va., 233 F. Supp. 31, aff'd sub nom., North River Ins. Co., et al. v. Connecticut Fire Ins. Co. v. Fidelity & Casualty Co. of New York, 4 Cir., 341 F.2d 913, decided February 8, 1965. As the Travelers' Garage Liability Policy issued to Empire Motors has a limit of $100,000 for each person, it follows that, if Reavis was covered under the Travelers' policy, Allstate's liability, if any, would be confined to the uninsured motorist phase of the case.

Plaintiff did not sue his employer, Empire Motors. Indeed, he was prohibited from so doing.

By reason of Endorsement 1721A (A164) attached to the Travelers' policy —which endorsement is under question in this litigation—it is provided that the word "insured", while using an automobile covered by said policy, includes—

"2.(b) Any other person, but only if no other valid and collectible automobile liability insurance, either primary or excess, with limits of liability at least equal to the minimum limits specified by the financial responsibility law of the state in which the automobile is principally garaged, is available to such person, —provided the actual use of the automobile is with the permission of the named insured."

"2. The 'Limits of Liability' Conditions pertaining to the Bodily Injury Liability and Property Damage Lia-

bility Coverages are made subject to the following provision:

"Provided that with respect to a person described as insured under subsection 2(b) of the 'Definition of Insured' and any person or organization (other than the named insured or a person described in subsection 2(a) of the 'Definition of Insured') legally responsible for the use of the automobile by such person,

"(i) the applicable limit of the company's liability shall be the amount by which (1) the applicable minimum limit of liability for bodily injury or property damage specified in the financial responsibility law of the state in which the automobile is principally garaged exceeds (2) the sum of the applicable limits of liability under all the other valid and collectible insurance available to the insured, and

"(ii) the insurance under this policy shall not apply to any loss with respect to which the insured has other valid and collectible insurance unless the total amount of the loss exceeds the sum of the limits of liability of all other policies affording such other insurance and the company shall then be liable, subject to clause (i) foregoing, only for the excess."

■ Under Endorsement 4187A attached to the Travelers' policy issued to Empire Motors, there is provision for coverage in situations involving an uninsured motorist. The word "insured" is defined to include the named insured and "any other person while occupying an insured automobile." Plaintiff is, therefore, an "insured" under the uninsured motorist endorsement. The Endorsement 4187A contains a further provision relating to "Other Insurance" reading in part as follows:

"With respect to bodily injury to an insured while occupying or through being struck by an uninsured automobile, if such insured is a named insured under other similar insurance available to him, then the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable under this endorsement for a greater proportion of the applicable limit of liability of this endorsement than such limit bears to the sum of the applicable limits of liability of this insurance and such other insurance.

"With respect to bodily injury to an insured and subject to the foregoing paragraphs, if the insured has other similar insurance available to him against a loss covered by this endorsement, the company shall not be liable under this endorsement for a greater proportion of such loss than the applicable limit of liability hereunder bears to the total applicable limits of liability of all valid and collectible insurance against such loss."

The limit of liability under Endorsement 4187A issued by Travelers is $15,000 for each person ($30,000 maximum for each accident) as to uninsured motorist liability.

■ When this case was initially briefed and argued, counsel for Travelers ably argued that plaintiff could not collect more than the maximum of $15,000 under the uninsured motorist provision and, since Allstate was liable to plaintiff for this amount, Travelers was not liable under its uninsured motorist endorsement. Reliance was placed upon Travelers Indemnity Co. of Hartford, Conn. v. Wells, 4 Cir., 316 F.2d 770. However, on March 8, 1965, the Supreme Court of Appeals of Virginia handed down its opinion in Bryant v. State Farm Mutual Automobile Insurance Company, 205 Va. 897, 140 S.E.2d 817, which expressly disagrees with the Wells case. As the Supreme Court of Appeals of Virginia is the final word on the interpretation of any state statute which raises no federal question, the Wells case is no longer the law. The Bryant opinion

holds that the "Other Insurance" provision in the policy is invalid as being in conflict with § 38.1–381(b) of the Code of Virginia, as amended. As both Allstate and Travelers issued policies or endorsements containing essentially the same language under their "Other Insurance" provisions as in Bryant, these clauses are invalid. Undeniably plaintiff would be entitled to recover the full amount of his judgment, interest and costs, subject to later comments as to compensation benefits, pursuant to the provisions of the uninsured motorist law, if the uninsured motorist provisions are applicable to this case.

 More involved is the question as to the extent of liability of each insurance carrier *inter sese*. For the reasoning set forth in Bryant v. State Farm Mutual Automobile Insurance Company, supra, and the even later case of Maryland Casualty Company v. Burley, 4 Cir., 345 F.2d 138, decided April 29, 1965, we hold that Travelers' endorsement 1721A (A164) attempting to limit the "insured" to one who has no other valid and collectible automobile liability insurance is invalid as being contrary to § 38.1–381 (a). This was the precise question before the Court of Appeals for the Fourth Circuit in the Burley case and, in the absence of a controlling decision from Virginia's highest court, is binding upon this Court. It follows that Travelers afforded the primary coverage to Reavis, a judgment debtor jointly and severally liable to plaintiff. With primary coverage afforded to Reavis in a sum sufficient to satisfy all claims, there is no liability on the part of Allstate to Reavis under the family automobile policy issued to Reavis.

 Having held that Travelers' policy affords sufficient protection to plaintiff to satisfy the judgment, interest and costs, we are not concerned with any right of contribution. It is now universally settled in Virginia that an uninsured motorist provision does not create insurance for the uninsured motorist or the uninsured automobile. Drewry v. State Farm Mutual Automobile Ins. Co., 204 Va. 231, 129 S.E.2d 681; Horne v. Superior Life Insurance Company, 203 Va. 282, 123 S.E.2d 401; Nationwide Mutual Ins. Co. v. Harleysville Mutual Cas. Co., 203 Va. 600, 125 S.E.2d 840; Hobbs v. Buckeye Union Casualty Company v. Celina Mutual Insurance Company, W.D.Va., 212 F.Supp. 349. In the latter case, Buckeye paid the judgment obtained by plaintiff and sought contribution from Celina which had issued a policy to plaintiff containing an uninsured motorist endorsement. As Judge Dalton so aptly pointed out, Virginia's uninsured motorist law is primarily concerned with providing adequate compensation for injured insureds when other sources are lacking.[3]

We hold, therefore, that Travelers is liable for the full amount of the judgment, interest and costs—as well as the costs of this action—and that Allstate is not liable to plaintiff (except by virtue of its uninsured motorist provision which is inapplicable if Travelers pays the judgment) or, by way of contribution, to Travelers. Allstate is, at best, a contingent surety. Travelers may deduct from said sum the amount paid by way of medical, hospital and compensation benefits to plaintiff or for his benefit, less reasonable expenses and attorney's fees of said plaintiff, which said expenses and attorney's fees shall be apportioned pro rata between the plaintiff and Travelers. § 65–39.1, Code of Virginia, as amended. The amount of said deduction may be agreed upon and stated in the judgment order. Attorney's fees customarily allowed in such matters are one-third of the amount recovered.

Present judgment order in accordance with this memorandum.

---

3. Not briefed or argued is plaintiff's status as an employee of Empire Motors (the named insured) relating to a possible exclusionary clause in the Travelers' policy. This matter is discussed in North River Ins. Co. v. Connecticut Fire Ins. Co., D.C., 233 F.Supp. 31, 38–39, and we adopt Judge Dalton's reasoning on this point.