## Richmond

GENERAL ACCIDENT FIRE AND LIFE ASSURANCE CORPORATION, LTD.
v. AETNA CASUALTY AND SURETY COMPANY.

January 15, 1968.

Record No. 6523.

Present, All the Justices.

*Henry C. Morgan, Jr.* for plaintiff in error.

*Lawson Worrell, Jr.* (*Williams, Cocke, Worrell & Kelly*, on brief), for defendant in error.

HARRISON, J., delivered the opinion of the Court.

On October 20, 1961, Villie V. Cousins was injured in a motor vehicle collision in Norfolk, Virginia, involving an automobile owned and operated by Deloris Fennell Murphy. Thereafter Mrs. Cousins

recovered of Mrs. Murphy a judgment for her damages in the amount of $3,000.00 plus interest and costs. Execution was issued on the judgment and returned unsatisfied.

At the time of the accident, there was in effect an automobile liability insurance policy issued by General Accident Fire and Life Assurance Corporation, Ltd., hereinafter called General Accident, to Mrs. Cousins, to which was attached an "uninsured motorist endorsement".

General Accident asserts that at the time of the accident the vehicle driven by Mrs. Murphy was covered by a policy of automobile liability insurance issued in North Carolina by Aetna Casualty and Surety Company, hereinafter called Aetna; that Aetna declined to defend Mrs. Murphy in the action filed against her by Mrs. Cousins, notwithstanding it was notified of the accident and the action, both by Mrs. Murphy and General Accident; and that Aetna refused to pay the judgment against Mrs. Murphy after being requested to do so by General Accident.

General Accident, pursuant to the terms of its policy issued to Mrs. Cousins, defended the action brought by Mrs. Cousins, against Mrs. Murphy upon the premise that Mrs. Murphy was an uninsured motorist, and paid the amount recovered by Mrs. Cousins. Thereafter General Accident filed its motion for judgment, in the Circuit Court of the City of Norfolk, seeking to recover from Aetna the amount it paid Mrs. Cousins, together with the expenses it incurred in defense of the action. It alleged the facts above recited and the following:

"11. That pursuant to the uninsured motorist endorsement of a policy of automobile liability insurance issued to Villie V. Cousins, the plaintiff was caused to pay the judgment entered against Deloris Fennell Murphy and to defend the action instituted against her as a result of the failure of the defendant to defend and pay the judgment against the said Deloris Fennell Murphy, and wilfull breach of its contract and in violation of the laws and statutes pertaining to the issuance of its policy of automobile liability insurance.

"12. That in its own right and pursuant to its rights of subrogation from the said Villie V. Cousins and from the said Deloris Fennell Murphy, the plaintiff is entitled to judgment in the amount of Five Thousand Five Hundred Twenty-three and 77/100 Dollars ($5,523.77) plus interest, costs of this proceeding and its attorney's fees attendant to this proceeding."

To the motion for judgment, Aetna filed its demurrer which was sustained by the court below.

To review this final order, entered May 16, 1966, we granted General Accident a writ of error.

The sole question presented by this appeal is whether an insurer (General Accident), paying a claim under an uninsured motorist endorsement, is entitled to be subrogated, not only to the rights of its insured (Mrs. Cousins) against the tort feasor (Mrs. Murphy), but also against the uninsured motorist's (Mrs. Murphy) liability insurer (alleged to be Aetna).

General Accident says such a right of subrogation does exist and that it has the right to have Aetna's liability under its alleged contract with Mrs. Murphy litigated and decided in this action.

Aetna responds that General Accident is a mere volunteer, it having paid the judgment at a stage in the proceedings when nothing had been determined but that Mrs. Murphy was liable in damages to Mrs. Cousins and the amount of liability. It further suggests the remedy that should have been pursued by General Accident was a suit for a declaratory judgment against Mrs. Murphy, Aetna and Mrs. Cousins, in which it could have been determined whether Mrs. Murphy was in fact an uninsured motorist, and whether Aetna or General Accident was liable to Mrs. Cousins, and which company should defend.

Aetna also says that among the several courses of action available to Mrs. Cousins, she could have requested Mrs. Murphy to sue Aetna to recover the amount of the judgment, or she could have sued Aetna direct, or she could have sued General Accident claiming a right to recover the amount of the judgment under the Uninsured Motorist Act.

We do not have to decide here what alternative remedies, or optional courses of action, if any, were available to General Accident to determine its liability or the liability of Aetna. The fact is that General Accident has paid the amount recovered by Mrs. Cousins against Mrs. Murphy, the tort feasor, and now seeks to recover the amount in a direct action against Aetna, the alleged liability insurer of Mrs. Murphy. If the action can be maintained its authorization must be found within the provisions of Virginia's Uninsured Motorist Act.

The uninsured motorist endorsement attached to the Cousins'

liability policy is the endorsement required by § 38.1-381 (b) of the Code of Virginia, as amended, which provides in part:

"Nor shall any such policy or contract relating to ownership, maintenance or use of a motor vehicle be so issued or delivered unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle. . .."

The first question presented is whether the automobile driven by Mrs. Murphy was an uninsured motor vehicle, at the time of the accident in which Mrs. Cousins was injured, within the meaning of the Uninsured Motorist Law, so as to bring the endorsement into operation.

Code § 38.1-381 (c) provides in part:

"* * * [T]he term 'uninsured motor vehicle' means a motor vehicle as to which there is no (i) bodily injury liability insurance and property damage liability insurance both in the amounts specified by § 46.1-1(8), as amended from time to time, or (ii) there is such insurance but the insurance company writing the same denies coverage thereunder. . .."

[1] There is no dispute that Aetna denied coverage under its alleged policy with Mrs. Murphy. Accordingly, coverage of the Murphy vehicle under the uninsured motorist endorsement on the policy of Mrs. Cousins was therefore available to her. This brings us to the remaining and controlling question, and that is whether or not General Accident is subrogated to the rights of Mrs. Cousins, not only against Mrs. Murphy, but also against Aetna.

To determine this issue, we look initially to the provisions of § 38.1-380 of the Virginia Code, which require that every policy or contract insuring against liability for injury to or the death of any person, or against liability for injury to or destruction of property, issued or delivered in Virginia, shall contain:

"(1) A provision that the insolvency or bankruptcy of the insured, or the insolvency of the insured's estate, shall not relieve the insurer of any of its obligations under the policy or contract.

"(2) A provision that in case execution on a judgment against the insured or his personal representative in an action brought to recover damages for injury sustained or loss or damage occasioned during the life of the policy or contract shall be returned unsatisfied, then an action may be maintained against the insurer under the terms of the policy or contract for the amount of such judgment not exceeding the amount of the applicable limit of coverage under the policy or contract."

This section, and § 38.1-381 of the Code, are, by force of their provisions, made a part of the policy and were enacted for the benefit of injured parties. Under these sections a policy of insurance is not solely one of indemnity for loss by the named insured, but is a contract of liability. However, the provisions that give the injured person the right to sue the insurer do not enlarge or extend the insurer's liability but only permit the injured person to exercise or succeed to the insured's rights against the insurer. *Storm* v. *Nationwide Mutual Insurance Company*, 199 Va. 130, 97 S. E. 2d 759. The right of the injured person to maintain the action against the insurer rises no higher than the right of the insured against the insurer. *Ampy* v. *The Metropolitan Casualty Insurance Company of New York*, 200 Va. 396, 105 S. E. 2d 839.

Applying § 38.1-380, the statute is clear, and the decided cases confirm, that Mrs. Cousins could have maintained an action against Aetna to recover the amount of the judgment, an execution having been issued on the judgment against Mrs. Murphy and returned unsatisfied. As the injured person, she stood in the same shoes as Mrs. Murphy, insofar as Aetna is involved, and was subject to the same defenses which Aetna could have asserted against Mrs. Murphy had the action been brought by the latter. Mrs. Cousins' right of subrogation to the rights of Mrs. Murphy against Aetna is expressly given by the statute.

But the Code § 38.1-380 goes no further than that, and if General Accident is to maintain its action against Aetna upon the theory of subrogation, the authority for such action must be found elsewhere. Counsel for General Accident relies upon this statute and Code § 38.1-381 (f). Upon an examination of the latter section, we find the following provision:

"Any insurer paying a claim under the endorsement or provisions required by paragraph (b) of this section *shall be subro-*

472

*gated to the rights of the insured* to whom such claim was paid *against the person causing such injury,* death or damage to the extent that payment was made; . . ." (Emphasis Supplied).

While the precise question has never been before this court, Chief Judge Dalton, in *White* v. *Nationwide Mutual Insurance Company,* 245 F. Supp. 1 (D. C. W. D. Va. 1965), dealt with a somewhat similar situation.

In that case White was injured in an automobile accident involving a car driven by Morrison. The Morrison vehicle was covered by a policy of automobile liability insurance issued in Tennessee by Allstate Insurance Company with a limit of $10,000.00 per person. At the time of the accident White was a member of the household of her father, to whom Nationwide Mutual Insurance Company had issued an automobile liability insurance policy. White sued Morrison as a tort feasor, and upon learning that the liability insurance on the Morrison vehicle was not equal to that required by the Virginia law, sent Nationwide an affidavit that she was relying on the uninsured motorist provision of her father's policy. Trial resulted in a recovery by White against Morrison of a judgment for $22,000.00. Allstate paid into court its full coverage, and the liability of Nationwide for the balance of the judgment was the issue involved. The court, in holding that the full limits of the Nationwide policy were available to satisfy the unpaid part of the judgment, and that Morrison qualified as an uninsured motorist under the statute, had occasion to consider § 38.1-381 (f) of the Virginia Code. After setting out the above quoted language of this section the court said:

". . . The rights of subrogation are against the tortfeasor not against another insurance company. The insurer, after payment to the insured, maintains all his rights against the uninsured motorist. Nationwide's rights will arise after payment is made. It can then determine the extent of the tortfeasor's assets and proceed accordingly. Nationwide's rights of subrogation against Morrison will not be damaged in toto as it claims." 245 F. Supp. at 7.

To the same effect, 10 Mich. Jur., Insurance, § 153 (1966 Cum. Supp. p. 92), where it is said:

"A Virginia statute requires every motor vehicle liability policy to contain an endorsement or provision undertaking to pay the in-

sured all sums, within prescribed limits, that he shall be entitled to recover as damages from the owner or operator of an uninsured motor vehicle. Provision is made for recovery under the endorsement when the owner or operator of the vehicle causing injury or damage is unknown. An insurer paying a claim under the endorsement is subrogated, to the extent of the payment, to the rights of the insured against the person causing the injury or damage. But the rights of subrogation under the statute are against the tort-feasor, not against another insurance company. And the insurer of one tort-feasor is not entitled to contribution from the uninsured motorist insurer of the injured plaintiff for any part of the judgment rendered against the insured tort-feasor and an uninsured tort-feasor." (Citing § 38.1-381 (f) of the Code of Virginia, *White* v. *Nationwide Mutual Insurance Company, supra, Southern* v. *Lumbermens Mutual Cas. Co.*, 236 F. Supp. 370 (W. D. Va., 1964).

The insurer's liability is contractual in nature and arises under the Uninsured Motorist Law after the liability of any uninsured motorist has been established in a court of competent jurisdiction. The endorsement placed on a liability policy is the endorsement required by statute. It is compulsory coverage to give relief to injured parties through insurance paid for by the insured and assessments from uninsured motorists. The legislature did not intend that any benefits would accrue to the uninsured motorist, for full subrogation rights in favor of the insurer against the tort feasor were preserved by the statute. Sub-section (f) of § 38.1-381 was discussed in *U.S.F. & G.* v. *Byrum*, 206 Va. 815, 818, 146 S. E. 2d 246, 248, where it was said:

"If Celina had paid the Jernigans' claims under its uninsured motorist endorsement, it would have been subrogated to their rights against the negligent third parties to the extent of such payments pursuant to the terms of sub-section (f) of § 38.1-381. This sub-section is the only provision in the uninsured motorist law which permits subrogation. Hence U. S. F. & G. is given no such right."

"In *Horne* v. *Insurance Company*, 203 Va. 282, 285, 123 S. E. 2d 401 we said:

" '***It is not the purpose of the uninsured motorist law to provide coverage for the uninsured vehicle, but its object is to afford the insured additional protection in event of an accident.***'

See also *Nationwide* v. *Harleysville Mutual*, 203 Va. 600, 603, 125 S. E. 2d 840; *Drewry* v. *State Farm Mutual*, 204 Va. 231, 237, 129 S. E. 2d 681."

Counsel for General Accident maintains that if Mrs. Cousins could have brought an action against Aetna to satisfy her judgment, then General Accident, which is subrogated to her rights, should also have a cause of action against Aetna. The answer is that the statute expressly gives the right of subrogation to Mrs. Cousins against Aetna, and expressly limits the right of subrogation of General Accident to an action against the person causing the injury, who in this case is Mrs. Murphy. The right given is against the tort feasor, and that right exists in the instant case. But it is not given against another insurance company.

[2] In light of the express language of the statute we cannot assume that the General Assembly meant to grant the right of subrogation which General Accident seeks in this case. The statute is not vague, uncertain or ambiguous. It is clear. It says that subrogation shall be against the person causing the injury, and it says nothing else. This court, in *Carter, Adm'r.* v. *Nelms*, 204 Va. 338, 345, 346, 131 S. E. 2d 401, 406, 407, on construction of the language of a statute said:

> ". . . It is elementary that it is the function of the courts to interpret and apply the acts of the legislature as written and not to rewrite or correct them. 17 Mich. Jur., Statutes, § 33, p. 282, and cases there collected.
>
> \* \* \*
>
> ". . . As we said in *Winston* v. *City of Richmond*, 196 Va. 403, 407, 408, 83 S. E. 2d 728, 731, 'When the legislature has spoken plainly it is not the function of courts to change or amend its enactments under the guise of construing them. The province of construction lies wholly within the domain of ambiguity, and that which is plain needs no interpretation.'
>
> "The question here is not what the legislature intended to enact, but what is the meaning of that which it did enact. We must determine the legislative intent by what the statute says and not by what we think it should have said."

Since the language of the statute is clear and unambiguous, there is no reason to consider the intent of the legislature, or the wisdom

of the law, or whether or not the section dealing with subrogation is too restrictive. If the right of subrogation is to be extended, it should be by amendment of the statute and an act of the General Assembly.

Accordingly, we hold that § 38.1-381 (f) of the Code of Virginia, as amended, which accords subrogation to an insurer (paying a claim under an uninsured motorist endorsement) to the rights of the insured (to whom the claim was paid) against the person causing the injury, does not accord subrogation to the uninsured motorist liability insurer of such person so as to permit the action brought by General Accident against Aetna. The judgment of the trial court is therefore

*Affirmed.*