# Northland ·Insurance Company

## v.

# Virginia Property and Casualty Insurance Guaranty Association, et al.

Record No. 891388

June 8, 1990

Present: All the Justices

*William N. Watkins (Eric S. Jensen; Sands, Anderson, Marks & Miller*, on briefs), for appellant.

*Edward H. Starr, Jr. (Edward E. Scher; Mays & Valentine*, on brief), for appellee Virginia Property and Casualty Insurance Guaranty Association.

No briefs or arguments for appellees Maria White, Archie White and Moses Peyton, Administrator of the Estate of Daniel Peyton.

JUSTICE WHITING delivered the opinion of the Court.

In this appeal, we decide whether the uninsured motorist statute, Code §§ 38.2-2200 through -2228.1 (the UM statute), or the Virginia Property and Casualty Insurance Guaranty Association Act, Code §§ 38.2-1600 through -1623 (the Guaranty Act), permits subrogation claims by an uninsured and underinsured motorist insurance (UM) carrier against the Virginia Property and Casualty Insurance Guaranty Association (the Association).

On June 8, 1985, while driving a car owned by his sister-in-law Lucy Peyton, Daniel Peyton collided with a truck driven by Archie White, in which Maria White was a passenger. Daniel was killed, and the Whites and Lougene Peyton, a passenger in the car, were injured.

The Peyton car was covered by an automobile liability insurance policy issued by Allstate Insurance Company (Allstate). This policy had bodily injury insurance limits of $25,000 for each person's claim and $50,000 for each accident. Daniel was provided similar coverage under a family automobile policy issued by American Interinsurance Exchange (AIE). The truck occupied by the Whites was insured under a policy issued by Northland Insurance Company (Northland). This policy provided UM coverage of $750,000 per accident.

On March 3, 1988, the Whites obtained individual judgments against Moses Peyton, administrator of Daniel's estate (the administrator), in the Circuit Court of King George County. Maria's and Archie's judgments were for the respective sums of $55,000 and $35,000.

By March 3, 1988, Allstate had paid $20,000 in settlement of other claims arising out of this collision. Thereafter, Allstate paid the balance of its $50,000 coverage to the Whites, $20,000 to Maria, and $10,000 to Archie. This left Maria and Archie with unpaid judgments of $35,000 and $25,000, respectively. The Whites were unable to collect any part of these judgments from AIE, Daniel's carrier, because it was declared insolvent and ordered liquidated.

Northland, under its UM coverage, then paid Maria $10,000, the amount by which the balance due on her judgment exceeded the Allstate and AIE policy limits. Northland refused to pay any other amounts. Later, on November 29, 1988, Northland and the administrator filed a petition for declaratory judgment against the

Whites and the Association, seeking an adjudication that the Association was liable for the unpaid balances of the Whites' judgments.

On August 10, 1989, the trial court concluded that Northland had no cause of action against the Association and sustained the Association's motion for summary judgment. Northland appeals.

During the pendency of this appeal, Northland paid the Whites the remaining unpaid balances of their judgments. Therefore, Northland claims that it "now owns" the Whites' judgments against Daniel, to the extent of its payments to the Whites.

Northland bases this claim upon subrogation principles, arising out of various provisions of the Guaranty Act and the UM statute. We review these provisions to determine whether Northland is subrogated to whatever rights the Whites may have had against the Association.

■ "The purpose of [the Guaranty Act] is to establish an association that shall provide prompt payment of *covered claims* to reduce financial loss to claimants or policyholders resulting from the insolvency of an insurer." Code § 38.2-1600 (emphasis added). Insurance companies, licensed to sell insurance in the Commonwealth as "member insurers," are required to contribute to a fund providing limited payment to those Virginia claimants or insureds whose responsible insurance carrier has become insolvent and, therefore, cannot pay liability claims. Code § 38.2-1606(A)(3).

■ Code § 38.2-1606(A)(2) subjects the Association to AIE's obligation "to the extent of the insolvent insurer's [AIE's] obligation on the *covered claims*." (Emphasis added.) In pertinent part, Code § 38.2-1603 defines a "covered claim" as "an *unpaid* claim . . . submitted by a claimant." (Emphasis added.)

Northland contends that it has a "covered claim" against the Association simply because the Whites have an unpaid claim against Daniel and AIE. Whatever right Northland has depends on whether the Whites had a claim against *the Association* because Northland may only be subrogated to those claims which the Whites may have asserted themselves. *See Aetna Casualty & Surety Co. v. Whaley*, 173 Va. 11, 16, 3 S.E.2d 395, 396-97 (1939).

■ The Whites, however, had no claim against the Association, because they were first required to exhaust their remedies against Northland, as their UM carrier, before they could assert a claim

against the Association. Code § 38.2-1610(A);* *Virginia Prop. and Cas. Ins.* v. *Int'l Ins.*, 238 Va. 702, 706, 385 S.E.2d 614, 616-17 (1989) (construing former Code § 38.1-767(1), which is substantively the same as Code § 38.2-1610(A)). Because Northland paid the Whites the full amount of their claims, as required under its UM coverage, the Whites never suffered a financial loss because of AIE's insolvency and, therefore, never had a claim against the Association. Accordingly, the Guaranty Act provided the Whites with no rights to which Northland could be subrogated.

Next, we consider whether Northland has a subrogation right against the Association under the UM statute. This statute expressly grants a UM provider a right of subrogation "against the person causing the injury, death, or damage and that *person's insurer*" when a provider pays an injured party's UM claim. Code § 38.2-2206(G) (emphasis added). Code § 38.2-100 provides that an " '[i]nsurer' means an insurance company." It also provides that an " '[i]nsurance company' means any company engaged in the business of making contracts of insurance." *Id.* The Association, however, made no contract of insurance with Daniel. Moreover, the Association is not engaged in the business of making contracts of insurance. Therefore, because the Association is not Daniel's "insurer," Northland has no subrogation rights against the Association under the UM statute. *See General Accident* v. *Aetna*, 208 Va. 467, 474-75, 158 S.E.2d 750, 755 (1968) (UM carrier had no subrogation right against tortfeasor's insurance carrier because earlier version of Code § 38.2-2206(G) did not provide for it).

For these reasons, the judgment of the trial court will be

*Affirmed.*

---

* Code § 38.2-1610(A) provides:
Any person having a claim against an insurer under any provision in an insurance policy, other than a policy of an insolvent insurer under which the claim is also covered, shall be required to first seek recovery under the policy covered by the insurer which is not insolvent. Any amount payable [by the Association] on a covered claim under this chapter shall be reduced by the amount of any recovery under the insurance policy.