## CIRCUIT COURT OF THE CITY OF RICHMOND

Annie Rivers Dailey, Adm'x etc., et al.

v.

United States Fidelity and Guaranty Co. et al.

June 19, 1991

Case No. LS-1546-4

## By JUDGE RANDALL G. JOHNSON

This is a declaratory judgment action to determine whether an "umbrella policy" issued by defendant United States Fidelity and Guaranty Company ("USF&G") provides underinsured motorist coverage. Such coverage, if applicable, would pay $1,000,000 of a $1,800,000 judgment rendered in this court in favor of plaintiffs against defendant Joseph C. Baker.

On August 4, 1989, Walter Dailey, Jr., was fatally injured when the vehicle he was driving was struck by a vehicle driven by Baker. At the time of the collision, Baker was speeding and under the influence of a combination of alcohol and a tranquilizer prescribed for his grandfather. While holding an open beer can between his knees, Baker hit the back of Dailey's vehicle, causing it to flip and breaking Dailey's neck. The jury's verdict in the ensuing wrongful death case was for $1,500,000 in compensatory damages and $300,000 in punitive damages, and judgment was entered on that verdict. Plaintiffs in the instant action are Dailey's widow and two children, the beneficiaries of the jury verdict and resulting judgment.

The vehicle which Dailey was driving was owned by Carleton Motors, Inc., and was being driven by Dailey as a favor to his neighbor. The neighbor, an employee of Carleton Motors, was to pick up the vehicle from a car dealer in Richmond and drive it to Carleton Motors' lot in southern Chesterfield County. The neighbor had obtained Carleton Motors' permission for Dailey to drive the vehicle. It was while Dailey was performing this chore for his neighbor and, thus, Carleton Motors, that the fatal collision occurred.

There are four insurance policies relevant to this case. First, the car driven by defendant Baker had liability coverage of $50,000. Second, Carleton Motors had a USF&G "garage policy" with underinsured limits in the amount of $750,000. Third, Carleton Motors had a commercial umbrella policy, also issued by USF&G, with limits of $1,000,000. And fourth, Dailey had his own liability policy with underinsured motorist coverage of $50,000. The parties agree that plaintiffs have received everything to which they are entitled under three of the policies involved. Specifically, plaintiffs have been paid $50,000 by the carrier who insured defendant Baker's car; $50,000 by Dailey's insurer; and $700,000 by USF&G under its garage policy, USF&G having been given a $50,000 credit for the amount paid by the insurer of the Baker vehicle. *See* Va. Code § 38.2-2206(B). This leaves $1,000,000 of the judgment unpaid, which by eerie coincidence is the precise amount of the umbrella policy which forms the basis of this action.

Plaintiffs and USF&G have filed cross-motions for summary judgment. At issue is whether the uninsured and underinsured motorist coverage of USF&G's garage policy has been carried over into the umbrella policy, also issued by USF&G. Plaintiffs contend that it has. USF&G contends it has not. Defendant Baker has failed to file responsive pleadings. The court finds that there are no material facts genuinely in dispute and that summary judgment is appropriate.

## 1. *Exclusion Provision*

USF&G denies coverage for two reasons. First, it contends that the "Insuring Agreement" of the umbrella policy does not include an agreement to provide uninsured

and underinsured coverage. Second, it argues that even if the language of the Insuring Agreement is broad enough to include such coverage, that coverage is specifically excluded by another provision of the umbrella policy. While at first glance it might seem inappropriate to deal with an *ex*clusion prior to deciding whether something is *in*cluded, it makes sense to do so in this case. Both the plaintiffs and USF&G spent substantial portions of their briefs and oral arguments discussing a possible exclusion of underinsured motorist coverage and, as USF&G argues, a finding in its favor on such exclusion would save considerable time and space here. Moreover, the court feels that a complete record should be made in this case in the event of an appeal. Accordingly, I will address the issue of the exclusion provision first.

The specific exclusion at issue is found on page 1 of the "Commercial Umbrella Liability Coverage Form" which is a part of the umbrella policy under consideration. It provides:

> 2. Exclusions:
>     The exclusions applicable to the "underlying insurance"[1] also apply to this insurance. Additionally, this insurance does not apply to . . . .
>     d. Any obligation imposed under any of the following laws . . . .
>         (2) Any automobile no-fault uninsured motorists, underinsured motorists . . . or any similar law.

It is USF&G's position that uninsured and underinsured motorist coverage is excluded from its commercial policy by this language. The court disagrees.

Section 38.2-2206(J) of the Code of Virginia states:

> Policies of insurance whose primary purpose is to provide coverage in excess of other valid and collectible insurance or qualified self-insurance *may* include uninsured motorist coverage as provided in subsection A of this section.

---

[1] The "underlying insurance" is the $750,000 garage policy previously mentioned.

> Insurers issuing or providing liability policies that are of an excess or umbrella type or which provide liability coverage incidental to a policy and not related to a specifically insured motor vehicle, *shall not be required to offer, provide or make available to those policies uninsured or underinsured motor vehicle coverage as defined in subsection A of this section.* (Emphasis added.)

As can readily be seen, the clear, straightforward, and unambiguous language of the statute states that uninsured and underinsured motor vehicle coverage is *not* required in umbrella policies such as the one at issue here. In equally clear, straightforward, and unambiguous language, USF&G's exclusion set out above excludes only those "obligations imposed under any . . . uninsured motorists, underinsured motorists . . . or any similar law." Since § 38.2-2206(J), by its very terms, negates any requirement for uninsured or underinsured motorist coverage, such coverage is not an "obligation imposed under any . . . uninsured motorists, underinsured motorists . . . or any similar law." If such coverage exists, it exists voluntarily.[2]

USF&G argues that the narrow interpretation of its exclusion provision now adopted by the court is improper. This is so, according to USF&G, because if that exclusion only applies to obligations that *are* imposed by law, it would be a nullity, since it cannot legally exclude something which the law says must be included. The court agrees that such an attempted exclusion would be a nullity. This does not, however, give the court license to change the parties' agreement. Where contract language is clear and unambiguous, no "interpretation" is needed. It will be given its stated meaning:

> It is the function of the court to construe the language of the [insurance] contract as written, and the court cannot make a new contract

---

[2] "There is no prohibition against an insurer offering broader coverage than the minimum prescribed by law." Hill v. State Farm Mutual Auto. Ins., 237 Va. 148, 152, 375 S.E.2d 727 (1989).

for the parties different from that plainly intended . . . . *Pilot Life v. Crosswhite*, 206 Va. 558, 561, 145 S.E.2d 143 (1965).[3]

Thus, while the court's "interpretation" of the exclusion may well mean that the exclusion has no meaning at all, the court refuses to give that exclusion a meaning which its very terms negate. Having drafted the exclusionary language itself, USF&G will not now be heard to complain when the words it used are given their clear and unambiguous meaning. The court holds that the exclusion does not apply.[4]

### 2. The "Umbrella" Coverage

Having determined that the exclusion provision does not apply to any uninsured or underinsured motorist coverage voluntarily provided by USF&G, the court now turns to the remaining issue in the case; that is, whether such coverage *was* voluntarily provided. I find that it was not.

Just as the court is obligated to give the language in the exclusion its clear and unambiguous meaning, so too must the language of the Insuring Agreement be given its clear and unambiguous meaning. Such language, in fact, is found on the same page as the exclusion. It provides:

---

[3] Of course, if the exclusionary language were ambiguous, it would have to be construed "most strongly" against the insurer. Bituminous Casualty Corp. v. Sheets, 239 Va. 332, 336, 389 S.E.2d 696 (1990). See also, American Reliance Ins. Co. v. Mitchell, 238 Va. 543, 385 S.E.2d 583 (1989); United Services Automobile Association v. Pinkard, 356 F.2d 35 (4th Cir. 1966).

[4] It must also be noted that even under the construction of the umbrella policy urged by USF&G, the subject exclusion is a nullity. If, as USF&G argues, uninsured and underinsured motorist coverage is not included at all, there is nothing for the exclusion to exclude. Thus, whether the court's interpretation or USF&G's interpretation is correct, the exclusion provision as it relates to uninsured and underinsured motorist coverage is meaningless. For this reason, too, USF&G's argument is rejected.

COVERAGE A -- EXCESS LIABILITY[5]
   1. Insuring Agreement.
      a. We will pay those sums, in excess of the amount payable under the terms of any "underlying insurance," *that the insured becomes legally obligated to pay as damages* because of "injury" to which this insurance applies, provided that the "underlying insurance" also applies or would apply but for the exhaustion of its applicable limits of insurance. (Emphasis added.)

Simply put, a money judgment obtained in a personal injury action against a tortfeasor-driver who is uninsured or underinsured is not "damages" "that the insured [is] legally obligated to pay" -- either generally or in this case.

It is well settled that uninsured and underinsured motorist coverage provides no insurance to an uninsured or underinsured motorist. *Pulley v. Allstate Ins. Co.*, 242 F. Supp. 330 (E.D. Va. 1965). Indeed, our Supreme Court has observed:

It is not the purpose of the uninsured motorist law to provide coverage for the uninsured vehicle, but its object is to afford the insured additional protection in event of an accident. Here, [the uninsured motorist carrier] does not insure [the uninsured motorist] against liability. It insured [the insured]. . . against inadequate compensation. *Bobbitt v. Shelby Mutual Ins. Co.*, 209 Va. 37, 39, 161 S.E.2d 671 (1968) (quoting *Horne v. Insurance Company*, 203 Va. 282, 285, 123 S.E.2d 401 (1962). *See also, General Accident v. Aetna*, 208 Va. 467, 473-74, 158 S.E.2d 750, 754, and cases there cited.

Thus, while an insured's personal injury claim against an uninsured or underinsured motorist is, quite naturally, an action in tort, the insured's claim against the insured's

---

[5] The parties agree that only Coverage A of the umbrella policy is at issue.

insurer under an uninsured or underinsured motorist provision in the insured's policy is an action in contract. *See, e.g., General Accident v. Aetna, supra,* 208 Va. at 473. While such contract may render the insur*er* liable to the insured to the extent a tortfeasor is uninsured or underinsured, at no time does the insur*ed* become liable for damages to anyone. This distinction is crucial here.

As already noted, the Insuring Agreement of the umbrella policy provides that USF&G will pay "those sums . . . that the *insured* becomes legally obligated to pay as damages because of 'injury' . . ." (Emphasis added.) As used in the policy and so far as is relevant here, the term "insured" means Carleton Motors, Inc., and Walter Dailey, Jr., the decedent, only. Obviously, Mr. Dailey was never legally obligated to pay any sum as damages for his injuries. Nor was Carleton Motors. While Carleton Motors' insurer, USF&G, was obligated to pay plaintiffs under the underinsured motorist provision of the underlying garage policy, which it has done, *such obligation was USF&G's alone.* At no time, and under no circumstance, could Carleton Motors ever be "legally obligated" to pay damages solely because of the tortfeasor's underinsured status. Such liability rests with the insurer only. Accordingly, by the very terms of the umbrella policy's Insuring Agreement, the coverage sought by plaintiff here is precluded.

Plaintiffs make two arguments in support of their position that the umbrella policy does provide uninsured and underinsured motorist coverage. First, plaintiffs point to language in the policy and in an "Explanatory Memorandum" of the umbrella policy form filed by USF&G with the State Corporation Commission as part of the mandatory filings required by the SCC of all insurance companies. In the policy, also as part of the Insuring Agreement, the following language appears:

> This insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the "underlying insurance" except with respect to any provisions to the contrary contained in this insurance.

The Explanatory Memorandum states, in pertinent part:

> Coverage A[6] is excess over underlying insurance or a retained limit and is subject to the same terms, conditions, agreements, exclusions and definitions as the underlying insurance except when stated to the contrary in the Coverage Form. The effect of this "follow-form" application is that the coverage trigger in each policy of underlying insurance, whether it be "occurrence," "accident," "disease," or "claims-made," will also be the coverage trigger for Coverage A. Such follow-form application will prevent coverage gaps that could result if the coverage triggers are not identical.

Plaintiffs argue that the above policy provision and memorandum statement mean that the umbrella policy contains all of the types of coverage contained in the underlying garage policy. This simply is not true. The garage policy provides insurance for liability, medical payments, comprehensive and collision, as well as uninsured and underinsured motorist coverage. As already discussed, the umbrella policy covers only damages which the insured is obligated to pay. Indeed, both the policy provision and the memorandum statement specifically state that the umbrella policy "is subject to the same terms, conditions, agreements, exclusions and definitions as the underlying insurance *except*" when contrary provisions are contained in the umbrella policy. (Emphasis added.) The provision limiting the umbrella policy's coverage to damages which the insured is legally obligated to pay is clearly contrary to the underlying garage policy's provision for uninsured and underinsured motorist coverage. Thus, the umbrella policy provision controls.

Plaintiff's other argument concerns USF&G's answer to one of plaintiff's interrogatories in the wrongful death action. When asked to state the total amount of underinsured motorist coverage afforded by USF&G for Mr. Dailey's death, USF&G responded by including the amount of the umbrella policy. While USF&G later retracted its

---

[6] See n. 5 supra.

answer, it did so not on the basis that such coverage was not included, but that the previously-discussed exclusion excluded it. Plaintiffs contend that these actions show that even USF&G at one time interpreted its umbrella policy as providing the coverage which plaintiffs now seek and cite *American Realty v. Chase Manhattan*, 222 Va. 392, 281 S.E.2d 825 (1981), to argue:

> When the terms of an agreement are doubtful or uncertain, the interpretation placed thereon by the parties themselves is entitled to great weight and will be followed if that may be done without violating applicable legal principles. 222 Va. at 403 (quoting *L. O'Quinn et al. v. P. Looney et al.*, 194 Va. 548, 552, 74 S.E.2d 157 (1953). *See also, Dart Drug v. Nicholakos*, 221 Va. 989, 277 S.E.2d 155 (1981).

The problem with plaintiffs' argument, of course, is that it applies only in those instances where "the terms of an agreement are doubtful or uncertain." I have found that the terms of the policy at issue here do not fall within that category. Thus, USF&G's erroneous answer, later retracted for whatever reason, is entitled to no weight.[7]

### Conclusion

For the reasons stated above, plaintiff's motion for summary judgment will be denied, and USF&G's motion for summary judgment, asking the court to declare that USF&G has no obligation to pay plaintiffs any sum under its umbrella policy issued to Carleton Motors, Inc., as uninsured or underinsured motorist coverage, will be granted.

---

[7] There is no allegation by plaintiffs, nor from the record does it appear that one could legitimately be made, that plaintiffs were in any way prejudiced by USF&G's retraction of its initial answer. Accordingly, there is no claim or issue of estoppel or waiver.