**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 15-1656**

———————

RB&F COAL, INCORPORATED; OLD REPUBLIC INSURANCE COMPANY,

Petitioners,

v.

DELORIS J. MULLINS, o/b/o and Widow of Turl Mullins; DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

Respondents.

———————

On Petition for Review of an Order of the Benefits Review Board. (14-0169 BLA)

———————

Argued: September 21, 2016          Decided: November 18, 2016

———————

Before WILKINSON and FLOYD, Circuit Judges, and Irene M. KEELEY, United States District Judge for the Northern District of West Virginia, sitting by designation.

———————

Affirmed by published opinion. Judge Floyd wrote the opinion, in which Judge Wilkinson and Judge Keeley joined

———————

**ARGUED:** Mark Elliott Solomons, GREENBERG TRAURIG LLP, Washington, D.C., for Petitioners. Victoria Susannah Herman, WOLFE WILLIAMS & REYNOLDS, Norton, Virginia; Rebecca Jayne Fiebig, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents. **ON BRIEF:** Laura Metcoff Klaus, GREENBERG TRAURIG LLP, Washington, D.C., for Petitioners. Joseph E. Wolfe, WOLFE WILLIAMS & REYNOLDS, Norton, Virginia, for Respondent Deloris Mullins. M. Patricia Smith, Solicitor of Labor, Rae Ellen Frank

James, Associate Solicitor, Sean G. Bajkowski, Counsel for Appellate Litigation, Rita A. Roppolo, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director, OWCP.

---

FLOYD, Circuit Judge:

R B & F Coal Inc., and Old Republic Insurance Company (collectively, "RB&F") seek relief from an order of the Department of Labor's (DOL) Benefits Review Board (BRB) holding RB&F responsible for the payment of benefits to a coal miner, Turl Mullins, and survivor's benefits to his widow, Deloris Mullins, under the Black Lung Benefits Act, (BLBA), 30 U.S.C. § 901 et seq.[1]  The parties agree that the Mullins family is entitled to benefits.  The only remaining dispute is whether RB&F or another operator is liable for the claim.  We find that RB&F is liable, and therefore affirm the decision of the BRB.

I.

Before discussing the undisputed facts of this case, it is helpful to understand the statutory schemes at issue.  The BLBA provides benefits to miners who are disabled by pneumoconiosis. 30 U.S.C. §§ 901(a), 922(a), 932(c).  The mine operator that employed the disabled miner is liable for payment of those benefits.  See id. § 932(b).  In instances where a miner claiming benefits was employed by multiple coal mine operators, the BLBA authorizes the Secretary of Labor to promulgate

---

[1] For clarity, we will refer to these consolidated claims in the singular as Mullins's claim.

regulations to establish standards for apportioning liability among operators. Id. § 932(h).

The "responsible operator"--the operator ultimately found liable for the BLBA claim--is the most recent company to employ the miner, so long as that employer qualifies as a "potentially liable operator." 20 C.F.R. § 725.495(a)(1). The regulation then outlines five criteria an employer must satisfy in order to be a potentially liable operator, only one of which is relevant to this case: the operator and/or its insurer must be financially capable of assuming liability. Id. § 725.494(e). Once a miner files a claim, a DOL district director determines whether any of the miner's previous employers qualify as potentially liable operators. Id. § 725.407(a). If one or more operators are considered potentially liable operators, the district director names the potentially liable operator that most recently employed the miner as the "responsible operator." Id. §§ 725.407(b), 725.495(d).

The DOL bears the initial burden of proving that the operator it designates as responsible is a "potentially liable operator" under § 725.494.[2] Id. § 725.495(b). If the responsible operator designated by the district director believes that another party should be designated as the

_____

[2] RB&F's status as a potentially liable operator is not in dispute.

4

responsible operator, that operator bears the burden of proving that another operator more recently employed the miner, and that the later employer meets the § 725.494 criteria. Id. § 725.495(c)(2).

The Virginia Property and Casualty Insurance Guaranty Association (VPCIGA), is a state chartered non-profit association established by the legislature to "provide prompt payment of covered claims to reduce financial loss to claimants or policyholders resulting from the insolvency of an insurer." Va. Code Ann. § 38.2-1600.[3] All insurance companies that conduct business in Virginia are required by state law to join, and the association is funded by mandatory contributions from those members. Id. §§ 38.2-1604.

When a member insurer becomes insolvent, the VPCIGA takes on liability for some, but not all, of its obligations. See id. § 38.2-1606(A)(1). The VPCIGA is required to pay "covered claims" as that term is defined in the Guaranty Act. Id. In relevant part, the Guaranty Act provides: "Notwithstanding any other provision of this chapter, a covered claim shall not

---

[3] The provisions at Va. Code Ann. §§ 38.2-1600 to -1623 are collectively referred herein as the "Guaranty Act." The Virginia Insurance Guaranty Association Act, previously codified at Va. Code §§ 38.1-756.1 to -774, which created what is now the VPCIGA, was rewritten in 1986 and is now found at §§ 38.2-1600 to -1623. See 1986 Va. Acts ch. 562. The rewriting changed the name of the association, however, the substantive provision of the code relevant to this appeal remained the same.

include any claim filed with the [VPCIGA] after the final date set by the court for the filing of claims against the liquidator or receiver of an insolvent insurer." Id. § 38.2-1606(A)(1)(b).

II.

Turning now to the facts of this appeal, Turl Mullins worked as a coal miner for several years including stints with RB&F between 1985 and 1986 and Wilder Coal ("Wilder") between 1986 and 1988.[4] Mullins was diagnosed with pneumoconiosis in 2009, and filed a claim for benefits under the BLBA in that same year. As discussed above, under DOL regulations, liability for those benefits falls to the mine operator that most recently employed the miner for at least a year, so long as that employer is financially capable of assuming liability for the claim. 20 C.F.R. § 725.494. By the time Mullins filed his claim, Wilder was out of business. Further, its insurer, Rockwood Insurance Co. ("Rockwood"), a member of the VPCIGA, had been declared insolvent by a Pennsylvania court in August of 1991. See Boyd & Stevenson Coal Co. v. Dir., Office of Workers' Comp. Programs, 407 F.3d 663, 665 (4th Cir. 2005). Following Rockwood's insolvency, the court appointed a liquidator who set the final

---

[4] Mullins also worked for other coal mine operators, but it is undisputed that none of those operators are liable for his claim.

6

date for filing claims against Rockwood as August 26, 1992. See Uninsured Employer's Fund v. Mounts, 484 S.E.2d 140, 144 (Va. App. 1997), aff'd, 497 S.E.2d 464 (Va. 1998). The VPCIGA assumed responsibility for claims filed before that date--i.e., "covered claims"--but not for claims filed after that date. See id.; Va. Code Ann. § 38.2-1606(A)(1).

A DOL district director found that Mullins was entitled to benefits and that RB&F was the responsible operator. Contesting its liability, RB&F requested that the case be transferred to an Administrative Law Judge (ALJ) for a hearing.

The ALJ concluded that the district director gave a valid reason for not naming the more recent employer, Wilder, as the responsible operator. First, Wilder was out of business. Second, Wilder's insurer, Rockwood, was insolvent. And third, the VPCIGA was not liable for the claim because the August 26, 1992 bar date to file claims against Rockwood had passed. The ALJ then determined that, according to DOL regulations, the burden shifted to RB&F to show that Wilder was in fact financially capable of assuming liability.

The ALJ then found that RB&F had failed to show either that (1) Wilder or Rockwood was capable of assuming liability for Mullins's claim; or (2) the claim qualified as a "covered claim" under the Guaranty Act obligating the VPCIGA to assume liability for the claim. The ALJ also found that because this was not a

7

"covered claim," the district director had no duty to notify the VPCIGA or name it as a party. The ALJ concluded that RB&F was properly named as the responsible operator and was liable for Mullins's claim.

RB&F appealed the ALJ's determination to the BRB arguing that the ALJ incorrectly found that RB&F was the responsible operator.[5] RB&F also argued that to the extent that the Guaranty Act prevents the VPCIGA from assuming liability for Mullins's claim, it violates 20 C.F.R. § 726.203(c), which prohibits an insurance company from limiting its liability for black lung claims. The BRB disagreed and found that the prohibition did not apply to guaranty associations: "Contrary to employer's argument, state-run insurance guaranty associations are not covered by 20 C.F.R § 726.203(c), which prohibits private insurance carriers from limiting their liability for black lung claims." J.A. 15. As such, the BRB affirmed the ALJ's finding and denied RB&F's motion for reconsideration. RB&F's petition to this Court followed.

---

[5] RB&F also appealed the determination that Mullins had pneumoconiosis, that he was totally disabled, and that his death was due to pneumoconiosis. Those determinations were not appealed here.

8

III.

This Court reviews the legal conclusions of the BRB and the ALJ de novo to determine whether those conclusions are rational and consistent with applicable law. Westmoreland Coal Co. v. Cox, 602 F.3d 276, 282 (4th Cir. 2010) (quoting Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998)).

RB&F challenges the BRB's determination that Wilder was incapable of assuming its liability for Mullins's claim. RB&F claims that since Wilder's liability was fully covered by Rockwood, which was a member of the VPCIGA, then it cannot be found to be incapable of assuming liability because the VPCIGA is now obligated to pay the claim. For the reasons below, we disagree.

A.

Wilder is not a "responsible operator" for the purposes of the BLBA. A mine operator cannot be the "responsible operator" if it is financially incapable of assuming liability. 20 C.F.R. § 725.494(e).

It is undisputed that Wilder is bankrupt and is itself incapable of assuming liability. It is also undisputed that Wilder's insurance company, Rockwood, is insolvent and is incapable of assuming liability. According to DOL regulations, an operator's insurance policy "shall not be considered

9

sufficient to establish the operator's capability of assuming liability if the insurance company has been declared insolvent and its obligations for the claim are not otherwise guaranteed." Id. § 725.494(e)(1). Thus, the issue is whether or not liability for Wilder's claims are "otherwise guaranteed." Id. Under the Guaranty Act, Wilder's obligations for the claim are not otherwise guaranteed by the VPCIGA.

As discussed above, the final date for filing claims against Rockwood was August 26, 1992. Mullins's claim was filed in 2009, seventeen years after the final date to file his claim against Rockwood had passed. J.A. 12, 31. As such, this is not a "covered claim" under the Guaranty Act, and the VPCIGA is under no obligation to pay it. See Mounts, 484 S.E.2d at 144 (holding that VPCIGA's liability was limited to "covered claims" and that claims filed against Rockwood after August 26, 1992 were not "covered claims").

RB&F contends that the August 1992 bar date for filing claims against Rockwood is void based on our decision in Boyd & Stevenson, which it argues was based on "general principles of insurance law, that where the law establishes a condition of insurance that is impossible for a claimant to perform, it is ineffectual and void." Pets.' Br. at 15. Thus, RB&F claims that because Mullins could not have filed his claim before the

10

1992 bar date, the bar date creates a condition impossible and must be void. RB&F's reliance on Boyd & Stevenson is misplaced.

In Boyd & Stevenson, we determined that a notice provision sent to Rockwood's claimants after Rockwood's insolvency was capable of two interpretations: (1) that a claim for survivor's benefits was a separate claim that must be independently filed with the VPCIGA; or (2) that a claim for survivor's benefits was derivative of the original claim and did not require filing with the VPCIGA. 407 F.3d at 668-69. We then looked to the "general principle of contract law that exclusionary language in a contract will be construed against an insurer," and "adopt[ed] an interpretation which recognizes that a survivor's claim is part of a miner's original claim for filing purposes." Id. Then, we explicitly distinguished Mounts, stating in no uncertain terms that the matter in Boyd & Stevenson "is distinguishable from the Virginia Court of Appeals decision in . . . Mounts." Id. at 669. In Mounts, just as in this case, the miner was diagnosed with pneumoconiosis after the deadline for filing claims against Rockwood had passed, yet the Virginia court held that state law prevented the VPCIGA from assuming liability for the claim. 484 S.E.2d at 144. The "condition impossible" in this case is materially indistinguishable from the facts in Mounts. As such, Boyd & Stevenson does not apply.

11

RB&F contends that even if Virginia law limits the VPCIGA's liability, to the extent that the Guaranty Act limits liability for black lung claims, it is preempted by the BLBA. This argument centers on RB&F's assumption that the VPCIGA is an insurer for the purposes of the BLBA. If that were the case, the Guaranty Act's limitation might be preempted and the VPCIGA may be obligated to cover Mullins's claim. See Lovilia Coal Co. v. Williams, 143 F.3d 317, 325 (7th Cir. 1998) (holding that a state law in conflict with the BLBA was preempted). We do not have to reach the preemption question, however, because the VPCIGA is not an insurer for this claim and is thus not covered by the BLBA.

The BLBA requires employers to secure their liability for the payment of benefits by either self-insuring, or purchasing qualifying insurance. Specifically, the BLBA provides:

> [E]ach operator of a coal mine . . . shall secure the payment of benefits for which he is liable under section 932 of this title by (1) qualifying as a self-insurer in accordance with regulations prescribed by the Secretary, or (2) insuring and keeping insured the payment of such benefits with any stock company or mutual company or association, or with any other person or fund, including any State fund, while such company, association, person or fund is authorized under the laws of any State to insure workmen's compensation.

30 U.S.C. § 933(a). The Act further requires that:

> [E]very policy or contract of insurance must contain -- (1) a provision to pay benefits required under section 932 of this title, notwithstanding the provisions of the State workmen's compensation law which may provide for lesser payments; (2) a provision that insolvency or bankruptcy of the operator or discharge therein (or both) shall not relieve the carrier from liability for such payments; and (3) such other provisions as the Secretary, by regulation, may require.

Id. § 933(b). DOL's regulations provide that any such policy shall be construed to conform with the requirements of the BLBA, 20 C.F.R. § 726.203(c)(6), and that every carrier who writes insurance under the BLBA shall be deemed to have agreed to be bound "to the full liability for the obligations under the Act of the operator named in said report," id. § 726.210. See also id. § 726.207 ("Any requirement under any benefits order, finding, or decision shall be binding upon such carrier in the same manner and to the same extent as upon the operator."). As this Court has explained, the BLBA requires insurance carriers to "step[] into [the] shoes" of the insured employer. Tazco, Inc. v. Dir., Office of Workers Comp. Program, U.S. Dep't of Labor, 895 F.2d 949, 951 (4th Cir. 1990).

Therefore, the BLBA squarely puts the obligation to provide insurance on the mine operator and the insurance company writing the provision. It is clear that mine operators must be insured, even in the case of their own insolvency, and that any insurance carrier who writes insurance under the BLBA is bound to the full

13

liability of the covered operator. The issue in this case, then, is whether the VPCIGA is an insurer under the BLBA.

Under DOL regulations implementing the BLBA, "[i]nsurer or carrier means any . . . fund, including any State fund, authorized under the laws of a State to insure employers' liability under workers' compensation laws." 20 C.F.R. § 725.101(a)(18) (emphasis added).

The VPCIGA, however, is not an insurer in the traditional sense. As its name suggests, it is a state guaranty association; it only "steps into the shoes" of the insolvent insurance company for "covered claims." Va. Code Ann. § 38.2-1606(A)(1). The VPCIGA "is not engaged in the business of making contracts of insurance," Northland Ins. Co. v. Va. Prop. & Cas. Ins. Guar. Ass'n, 392 S.E.2d 682, 685 (Va. 1990),[6] but rather is designed to "provide prompt payment of covered claims to reduce financial loss to claimants or policyholders resulting from the insolvency of an insurer." Va. Code Ann. § 38.2-1600 (emphasis added). As the Supreme Court of Virginia has held:

---

[6] RB&F attempts to distinguish Northland because it dealt with subrogation claims against the VPCIGA under Virginia's uninsured motorist statute. The type of claim, however, is irrelevant; the important fact is that although the VPCIGA assumed responsibility for some claims against an insolvent insurer, it does not write insurance contracts and does not become an insurer for all of an insolvent insurance company's claims. See Northland, 392 S.E.2d at 685.

14

> The [Guaranty] Act, considered as a whole, clearly indicates that the General Assembly did not intend that the Association merely "step into the shoes" of the insolvent insurer. Establishment of the [VPCIGA] affords a mechanism for the timely payment of appropriate claims to avoid financial loss to certain classes of people. But it is not merely a solvent substitute for an insolvent insurance company.

Va. Prop. & Cas. Ins. Guar. Ass'n v. Int'l Ins. Co. (Foster), 385 S.E.2d 614, 616 (Va. 1989).[7]

Specifically, with regards to Rockwood's insolvency, the Virginia courts have further made it clear that VPCIGA was not intended to cover claims against Rockwood after August 26, 1992. Mounts, 484 S.E.2d at 144. In Mounts, the court held that because the claim in question was filed after the 1992 cutoff date, "the [VPCIGA] was barred by statute from considering

---

[7] RB&F argues that Foster shows that under Virginia law, the insolvency of Rockwood created a legal relationship between Wilder and the VPCIGA for the purposes of BLBA claims against Wilder, bringing the VPCIGA under the BLBA. However, according to the Supreme Court of Virginia, that legal relationship exists "only to the extent" that it was not otherwise limited by the Virginia Guaranty Act. Foster, 385 S.E.2d at 616 ("The insolvency of [the insurer] created a legal relationship between [the covered entity] and the [VPCIGA] which reflected the terms of the [insurers] policy only to the extent they were not otherwise limited by the [Guaranty] Act.") (emphasis added). As explained in Section I, supra, the legal relationship between a claimant and the VPCIGA is limited to "covered claims," which Mullins's is not.

Mounts' claim to be 'a covered claim,' . . . and was not authorized to pay benefits." Id.[8]

To the extent that a state guaranty association steps into the prior insurer's shoes as to the particular claim, and "insure[s] employers' liability under workers' compensation laws," that guaranty association is an insurer under the BLBA. 20 C.F.R. § 725.101(a)(18). However, the mere existence of a state guaranty company does not then impose liability on the guaranty company for all of the state's insolvent insurance companies' BLBA claims. See 62 Fed. Reg. 3338, 3369 (1997) ("[T]he Department and the award beneficiary may collect from a state insurance guaranty association where state law requires such an association to assume the insurers liabilities.") (emphases added). Only if that state guaranty association "insure[s] employers' liability under workers' compensation

---

[8] RB&F attempts to draw a distinction between this case and Mounts. It essentially argues that because the court in Mounts held that the state Uninsured Employer's Fund was found liable for the claim instead of a prior employer, then Mounts precludes imposition of liability on RB&F. However, the reason the liability did not fall to a previous employer in Mounts is because the statute assigning liability in that case did not require it, see 484 S.E.2d at 143, whereas the statute in this case, the BLBA, does place liability on prior employers if the most recent employer is financially incapable of assuming liability, 20 C.F.R. § 725.494(e). Moreover, it does not matter to whom liability eventually fell. The relevant fact is that the Virginia court held that the VPCIGA was barred by state law from assuming liability.

16

laws," does the association fall under the BLBA.  20 C.F.R. § 725.101(a)(18).  Here, Virginia chose not to require the VPCIGA to assume Rockwood's non-covered claims--in this case, Mullins's BLBA claim.

RB&F is correct in pointing out that insurers that cover an operator's BLBA claims are not permitted to provide partial liability for those claims.  See Tazco, 895 F.2d at 951.[9]  The VCPIGA, however, is not providing partial liability for Wilder/Rockwood's BLBA claims, but is rather assuming full liability of a subset of Rockwood's claims.  See Mounts, 484 S.E.2d at 144 (noting that the VPCIGA assumed full liability for "covered claims,"--claims made before August 26, 1992--but was barred by statute from assuming liability for non-covered claims--claims made after August 26, 1992).  In Tazco, we held

---

[9] RB&F makes an additional argument based on this Court's decision in Tazco.  It argues that Tazco's requirement that DOL provide notice of a claim to both the coal mine operator and the insurer means that DOL was required to provide notice first to the VPCIGA, regardless of whether it was liable for the claim under state law.  However, Tazco was a challenge brought because an interested party--the insurance company that covered the claim--did not receive notice of a claim and subsequently defaulted.  The ruling rested on due process grounds, namely "the guarantees of notice and opportunity to be heard," which the court reasoned were "[p]aramount among [constitutional] rights."  895 F.2d at 950 (citation omitted).  Here, RB&F has had an opportunity to be heard; it is simply arguing that VPCIGA should have been given notice first, in case they agreed to cover the claim.  The DOL's actions here did not deny RB&F due process.

17

that the insurance carrier was properly identified as the party in interest because "the carrier takes on all the employer's responsibilities in connection with insured claims." Id. at 951 (emphasis added). Under state law, however, the VPCIGA was barred from taking on all of Rockwood's claims. See Mounts, 484 S.E.2d at 144. Indeed, it was barred from taking on this claim.

In order to comply with the BLBA, it is clear that Wilder and Rockwood were required to cover all future BLBA claims against Wilder. See 30 U.S.C. § 933(a)-(b). Wilder and Rockwood's reliance on the VPCIGA to cover all future claims after both companies' insolvency, however, was misplaced. Full coverage of all claims against an insolvent insurer was not the purpose of the Guaranty Act. See Va. Code Ann. § 38.2-1600. Wilder and Rockwood could have--and likely should have under the BLBA--contracted with a reinsurer to cover the company's future BLBA liabilities. However, Wilder and Rockwood's misplaced reliance does not impose liability, as a matter of federal law, on the VPCIGA.[10] Under DOL regulations, the liability for

---

[10] RB&F argues that "Rockwood could not have been discharged from its bankruptcy reorganization without a plan to fully cover the workers' compensation claims for which it was liable and no bankruptcy judge would have accepted the proposition that Rockwood accounted for these liabilities by relying on a prior carrier and employer like Old Republic and RB&F." Pets.' Br. at 24. RB&F, however, offers no support for this statement and no evidence that Rockwood's bankruptcy reorganization shifted all
(Continued)

18

Mullins's claim falls to the "potentially liable operator" that most recently employed the miner. 20 C.F.R. § 725.495(a)(1). Since Wilder cannot be found to be a "potentially liable operator" under 20 C.F.R. § 725.494, the liability properly falls to the miner's next most recent employer, RB&F. Id. § 725.495(a)(3); see also Armco, Inc. v. Martin, 277 F.3d 468, 476 (4th Cir. 2002) (reaching a similar conclusion under earlier DOL regulations implementing the BLBA).

C.

RB&F additionally argues that the regulatory burden-shifting analysis applied by the ALJ violated the APA and Director, Office of Workers' Compensation Programs, Department of Labor v. Greenwich Collieries, 512 U.S. 267 (1994). But we need not answer this question here; the burden of proof was irrelevant to the outcome of this case. See N & N Contractors, Inc. v. Occupational Safety & Health Review Comm'n, 255 F.3d 122, 127-128 (4th Cir. 2001) (holding that even an erroneous shifting of the burden of proof is harmless if the decision did not turn on that burden); see also In re Schoonover, 331 F.3d 575, 577 (7th Cir. 2003) ("[T]he dispute was resolved on wholly

of the company's future BLBA liabilities to the VPCIGA (which again would have been directly contrary to Virginia law).

19

legal grounds, so the burden of persuasion is irrelevant."). The only disputed issues in this case are questions of law: whether the VPCIGA is liable for this claim under Virginia law, and if not, whether the Guaranty Act is preempted by the BLBA. The relevant facts--Wilder's bankruptcy, Rockwood's insolvency, the bar date for claims against Rockwood, and the date Mullins's claim was filed--are not contested. As such, the burden-shifting analysis under 20 C.F.R. § 725.495(c) had no impact on the ALJ's or the BRB's decision.

IV.

For the foregoing reasons, the decision of the Benefits Review Board is

AFFIRMED.