## UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-1708

WESTMORELAND COAL COMPANY,

Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR; JENNIFER L. QUILLEN, personal representative of the Estate of Patricia A. Fitzwater,

Respondents.

On Petition for Review of an Order of the Benefits Review Board. (14-0261 BLA)

Submitted: April 25, 2017                    Decided: June 7, 2017

Before WILKINSON, TRAXLER, and AGEE, Circuit Judges.

Petition denied by unpublished per curiam opinion.

Paul E. Frampton, Thomas M. Hancock, BOWLES RICE LLP, Charleston, West Virginia, for Petitioner. M. Patricia Smith, Solicitor of Labor, Rae Ellen Frank James, Associate Solicitor, Sean G. Bajkowski, Counsel for Appellate Litigation, Jeffrey S. Goldberg, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director, Office of Workers' Compensation Programs, United States Department of Labor. Timothy C. MacDonnell, Bethany M. Belisle, Student Caseworker, Black Lung Legal Clinic, WASHINGTON AND LEE

UNIVERSITY SCHOOL OF LAW, Lexington, Virginia, for Respondent Jennifer L. Quillen, personal representative of the Estate of Patricia A. Fitzwater.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Westmoreland Coal Company ("Westmoreland") petitions for review of an order of the Benefits Review Board affirming an administrative law judge's ("ALJ") decision awarding benefits under the Black Lung Benefits Act (the "BLBA"), *see* 30 U.S.C. §§ 901 *et seq.* Finding no error, we deny the petition for review.

I.

Congress enacted the BLBA to provide benefits to miners who are totally disabled by pneumoconiosis,[1] and to provide survivors' benefits to the miners' qualifying dependents. *See* 30 U.S.C. §§ 901(a), 922, 932(c). A miner's employer is generally responsible for paying such benefits, *see* 30 U.S.C. § 932(c), and in the case of a miner who has had multiple employers, the BLBA authorizes the Secretary of Labor to establish standards for apportioning liability among them, *see* 30 U.S.C. § 932(h).

The applicable regulations provide that the employer liable for the claim – known as the "responsible operator" – is the miner's most recent employer that qualifies as a "potentially liable operator" under 20 C.F.R. § 725.494. 20 C.F.R. § 725.495(a)(1); *see RB&F Coal, Inc. v. Mullins*, 842 F.3d 279, 281 (4th Cir. 2016). To qualify as a

---

[1] Pneumoconiosis is defined as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 20 C.F.R. § 718.201(a). The term "pneumoconiosis" includes both "clinical" pneumoconiosis and "legal" pneumoconiosis. 20 C.F.R. § 718.201(a); *see also Island Creek Coal Co. v. Compton*, 211 F.3d 203, 210 (4th Cir. 2000). Clinical pneumoconiosis is any disease that the medical community recognizes as having been caused by the presence of dust deposits in the lungs caused by dust exposure in coal mine employment, whereas legal pneumoconiosis is "any chronic lung disease or impairment and its sequelae arising out of coal mine employment." 20 C.F.R. § 718.201(a)(2).

"potentially liable operator," an employer must satisfy several criteria, including, as is relevant here, that it is financially "capable of assuming its liability" for the claim. 20 C.F.R. § 725.494(e). One basis by which an employer can satisfy this criterion is if the employer obtained, from an insurer that remains solvent, "a policy or contract of insurance . . . that covers the claim."[2] 20 C.F.R. § 725.494(e)(1).

The applicable regulations also establish the procedure for identifying the responsible operator. After a miner files a claim, the district director undertakes to determine whether there are any potentially liable operators. *See* 20 C.F.R. § 725.407(a). If there are, he designates as the responsible operator the potentially liable operator that employed the miner most recently. *See* 20 C.F.R. §§ 725.495(a)(1). When the district director does not name the miner's most recent employer as the responsible operator, he must explain his decision. 20 C.F.R. § 725.495(d). If the decision is because he determined that the most recent employer was not financially capable of assuming liability for the claim, he must include in the record a statement that a search of the Office of Workers' Compensation files revealed no record of insurance coverage for the operator or of the operator's authorization to self-insure. *See* 20 C.F.R. § 725.495(d).

The district director is precluded from changing his designation of the responsible operator after a claim has been referred to the Office of Administrative Law Judges for a hearing; thus, if an ALJ finds that a different operator should have been designated, the

_____

[2] An operator can also be financially capable of assuming liability for a claim if it is qualified as a self-insurer or if it possesses sufficient assets to secure the payment of BLBA benefits. *See* 20 C.F.R. § 725.494(e)(2), (3).

4

Black Lung Disability Trust Fund (the "Trust Fund") must assume liability for the claim. 20 C.F.R. §§ 725.407(d), 725.418(d); 65 Fed. Reg. 79990 (Dec. 20, 2000).

Westmoreland employed Jackie Fitzwater ("Miner") in various coal mining positions from 1956 to 1986. Lady H Coal Company then employed him in such positions from 1986 until his retirement on July 1, 1994. Miner died on September 24, 2008. In 2009, his widow, Patricia Fitzwater, filed this claim for survivor benefits.[3]

Upon her filing of this claim, the district director notified two operators, Lady H and Westmoreland, both of which denied their liability. Lady H's insurer, the West Virginia Coal Workers' Pneumoconiosis Fund (the "CWP Fund"), informed the district director through a third-party administrator that Lady H had been uninsured on Miner's last day of employment with Lady H on July 1, 1994. The district director indeed discovered that Lady H's policy had expired on March 16, 1994. He also learned that Lady H had declared bankruptcy and that its assets had been acquired by another company "free and clear of any liability." J.A. 28. For these reasons, the district director concluded that Lady H was not financially capable of assuming liability for the claim. When he determined that Mrs. Fitzwater was entitled to benefits, he designated Westmoreland as the responsible operator.

Westmoreland then requested a hearing, following which an ALJ issued a decision awarding Mrs. Fitzwater benefits and finding that Westmoreland was the responsible operator.

---

[3] Mrs. Fitzwater died during the pendency of this appeal, and the personal representative of her estate was substituted for her as a party.

5

To establish liability under the applicable regulations, Mrs. Fitzwater bore the burden of proving by a preponderance of the evidence: (1) that Miner suffered from pneumoconiosis; (2) that the pneumoconiosis arose from coal mine employment; and (3) that pneumoconiosis caused his death. *See* 20 C.F.R. §§ 718.202-203, -205.

In the context of a survivor's claim, a miner with at least 15 years of underground coal mine employment that had a totally disabling pulmonary impairment at the time of his death is rebuttably presumed to have died as a result of pneumoconiosis. *See* 20 C.F.R. § 718.305. The ALJ found that Mrs. Fitzwater in fact proved that Miner had a totally disabling pulmonary condition due to cor pulmonale with right-sided heart failure caused by workers' pneumoconiosis and emphysema.[4] *See* 20 C.F.R. § 718.204(b)(2)(iii), (iv). In so doing, the ALJ credited the opinion of Miner's treating physician, Dr. Lynn Smith. The ALJ found Dr. Smith's opinion to be well reasoned and supported by the opinion of another doctor, Dr. William Houser, as well as by Miner's treatment records. Accordingly, the ALJ gave Smith's opinion controlling weight and gave Dr. Houser's opinion full weight.[5] Based on the ALJ's disability finding, and on the fact that Miner had at least 15 years of underground coal mine employment, the ALJ

---

[4] Cor pulmonale is the enlargement of the right ventricle resulting from lung disease. *See* 20 C.F.R. § 718.204(b)(2)(iii); *Mancia v. Director*, 130 F.3d 579, 585 (3d Cir. 1997).

[5] The ALJ afforded only little weight to the opinions of two doctors with opinions contrary to Dr. Smith and Dr. Houser and who had reviewed less extensive documentation.

6

invoked the rebuttable presumption that his death was due to pneumoconiosis. *See* 20 C.F.R. § 718.305.

To rebut the presumption, Westmoreland was required to show either (1) that Miner suffered from neither clinical nor legal pneumoconiosis, or (2) that his death was not due to his coal-mine employment. 20 C.F.R. § 718.305(d)(2). The ALJ found that Westmoreland failed to make either showing. The ALJ's finding regarding the second showing was based primarily on her decision to credit the opinions of Dr. Smith and Dr. Houser and not to credit the opinions of the other two doctors.

Based on Dr. Smith's and Dr. Houser's opinions, as well as the final autopsy report showing simple coal workers' pneumoconiosis, diffuse pulmonary emphysema, anthracotic nodules, and mild pulmonary hypertensive changes, the ALJ found that Miner suffered from legal and clinical pneumoconiosis. Because Miner had at least 10 years of coal-mine employment, the ALJ applied the rebuttable presumption that his clinical pneumoconiosis had arisen out of that employment. *See* 20 C.F.R. § 718.203(b). And since Westmoreland had not produced any evidence to rebut the presumption, the ALJ found that Miner suffered from pneumoconiosis that arose from his coal-mine employment.

Additionally, the ALJ found Westmoreland to be the responsible operator insofar as Lady H was not insured or self-insured on Miner's last day of employment with Lady H. The ALJ rejected an argument by Westmoreland that the Trust Fund should assume liability either because an insufficient fund was set up in Lady H's bankruptcy to cover BLBA claims or because the district director failed to participate in the bankruptcy.

7

Westmoreland appealed, and the Board affirmed the decision.

II.

Westmoreland now again contends the ALJ erred in finding that it, rather than Lady H, was the responsible operator. We disagree.

On a petition for review of an order of the Board affirming an ALJ's decision, "we undertake an independent review of the record, as in the place of the [Board]," *Dehue Coal Co. v. Ballard*, 65 F.3d 1189, 1193 (4th Cir. 1995), to determine whether the decision "is in accordance with the law and supported by substantial evidence," *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006). We review the Board's legal conclusions de novo. *See id.*

The applicable regulations establish the burdens of proof pertaining to the issues of which companies are potentially liable operators and which is ultimately the responsible operator. The district director first bears the burden of proving that the designated responsible operator satisfies the criteria for being a "potentially liable operator." 20 C.F.R. § 725.495(b). However, once that burden is met, the burden shifts to the designated operator to show that another potentially liable operator employed the miner more recently. 20 C.F.R. § 725.495(c)(2).

Westmoreland does not deny that it was properly found to be a potentially liable operator. Rather, Westmoreland argues that Lady H, which employed Miner more recently, was also a potentially liable operator. Westmoreland does not deny that Lady H's insurance policy expired prior to Miner's last day of employment with Lady H. Nevertheless, Westmoreland maintains that the fact that the policy expired prior to

8

Miner's last day of employment was not sufficient by itself to justify the district director's determination that the policy did not provide coverage for the claim.

Westmoreland's argument ignores the fact that Labor Department regulations fix the coverage terms of BLBA policies. Under the mandatory BLBA endorsement, an insurer is liable if coverage was in effect on "the last day of the last exposure [to coal dust], in the employment of the insured." 20 C.F.R. § 726.203(a). Thus, once the district director determined that Lady H had no policy in place on Miner's last day of employment, he properly concluded that there "was no record of insurance coverage" for Lady H that covered Miner's claim.[6] 20 C.F.R. § 725.495(d). The district director's statement to that effect was "prima facie evidence that [Lady H was] not financially capable of assuming its liability for [the] claim." 20 C.F.R. § 725.495(d). And because Westmoreland did not produce evidence that Lady H in fact was financially capable of assuming liability for the claim, substantial evidence supported the ALJ's finding that Lady H was not financially capable.[7]

---

[6] Westmoreland also appears to argue that even if Lady H's policy did not cover the claim since it expired prior to Miner's last day of employment, the policy's *mere existence* might somehow warrant the district director's designating Lady H as the responsible operator. But that argument simply ignores the fact that a policy establishes an operator's financial capability only if the policy "covers the claim." 20 C.F.R. § 725.494(e)(1).

[7] Westmoreland suggests that it is *possible* that a trust fund was set up in Lady H's bankruptcy that could cover future black lung liability. However, once Westmoreland was shown to be a potentially liable operator, it was Westmoreland that bore the burden of proving Lady H's financial capability to assume liability for the claim, 20 C.F.R. § 725.495(c)(2), which it did not do.

(Continued)

9

Westmoreland alternatively argues that regardless of whether there was any evidence that Lady H was financially capable of assuming liability for the claim, the CWP Fund *conceded* that Lady H was financially capable. That is simply incorrect. Upon receiving notification that Lady H was being designated as a potential responsible operator, the CWP Fund agreed only "that [it] *should be a party in interest* to all future proceedings in this matter." J.A. 256 (emphasis added). Critically, the Fund "reserve[d] the right to contest [its] liability as responsible operator." J.A. 256.

### III.

In addition to challenging its designation as the responsible operator, Westmoreland also maintains that substantial evidence did not support the ALJ's findings that Miner was totally disabled and that Westmoreland failed to rebut the presumption that Miner's death was due to pneumoconiosis. Westmoreland's argument generally consists of claiming that the ALJ did not consider various pieces of evidence that it views as favorable to its case, or in not considering all the evidence together. In our view, the ALJ fully considered the evidence to which Westmoreland points and amply explained

Citing *Director v. Trace Fork Coal Co.*, 67 F.3d 503 (4th Cir. 1995), Westmoreland also argues that the Labor Department failed to properly develop the evidence on the question of whether Lady H was a potentially liable operator. However, *Trace Fork* is not applicable here because at the time that case was decided, the regulations did not yet specify which party bore the burden of proof on this issue. *See id.* at 507. In fact, section 725.495(c) was promulgated in response to our observation in *Trace Fork* that the BLBA's liability regulations did not address burdens of proof. *See* 62 Fed. Reg. 3364-65 (Jan. 22. 1997); *see also* 64 Fed. Reg. 54999 (Oct. 8, 1999); 65 Fed. Reg. 80008 (Dec. 20, 2000).

her findings; she simply did not reach the conclusions that Westmoreland would have preferred.[8] For the reasons that the Board thoroughly explained, the ALJ's findings were supported by substantial evidence.

IV.

In sum, finding no error, we deny Westmoreland's petition for review.

*PETITION DENIED*

---

[8] Westmoreland also argues that the ALJ erred in using the term "cor pulmonale" to refer to all right-sided ventricular dysfunction instead of giving it its proper meaning, which is limited to right-sided ventricular dysfunction resulting from lung disease. However, Westmoreland fails to identify any language in the ALJ's opinion to support its assertion that she used the term incorrectly, and we see no indication that she did.