**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 23-1486**

THREE H COAL COMPANY, INC.; OLD REPUBLIC INSURANCE COMPANY,

           Petitioners,

      v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR; RAY L. HALE,

           Respondents.

On Petition for Review of an Order of the Benefits Review Board. (22-0030 BLA)

Submitted: October 24, 2024                 Decided: January 21, 2025

Before WILKINSON and HEYTENS, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Petition for review denied by unpublished per curiam opinion.

**ON BRIEF:** Michael A. Pusateri, Mark E. Solomons, GREENBERG TRAURIG LLP, Washington, D.C., for Petitioners. Brad A. Austin, WOLFE WILLIAMS & REYNOLDS, Norton, Virginia, for Respondent Ray L. Hale. Seema Nanda, Solicitor of Labor, Barry H. Joyner, Associate Solicitor, Jennifer Feldman Jones, Deputy Associate Solicitor, Michael P. Doyle, Counsel for Appellate Litigation, Olgamaris Fernandez, Senior Attorney, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Three H Coal Company ("Three H Coal") and Old Republic Insurance Company ("Old Republic") petition for review of an order of the Benefits Review Board ("BRB") affirming an administrative law judge's ("ALJ") decision ordering Three H Coal to pay black lung benefits to Ray Hale under the Black Lung Benefits Act ("BLBA"), *see* 30 U.S.C. §§ 901-944. The parties do not dispute that Hale is totally disabled due to pneumoconiosis arising from his coal mine employment and is entitled to benefits under the BLBA. The only issue is whether Three H Coal should have been ordered to pay those benefits. Finding no error, we deny the petition for review.

I.

Congress enacted the BLBA to provide benefits to miners who are totally disabled by pneumoconiosis. Generally speaking, coal mine operators that employed the miner and contributed to his disability or death are liable for the payment of such benefits. The operators may secure the payment of such benefits by "(1) qualifying as a self-insurer in accordance with regulations prescribed by the Secretary, or (2) insuring and keeping insured the payment of such benefits with any stock company or mutual company or association, or with any other person or fund, including any State fund, while such company, association, person or fund is authorized under the laws of any State to insure workmen's compensation." 30 U.S.C. § 933(a).

Where a miner has worked for multiple coal mine operators, the black lung regulations establish standards for apportioning liability. *See* 30 U.S.C. § 932(h); 20 C.F.R. §§ 725.490-.495. Pursuant to the regulations, "[t]he operator responsible for the payment

3

of benefits . . . (the 'responsible operator') shall be the potentially liable operator, as determined in accordance with § 725.494, that most recently employed the miner." 20 C.F.R. § 725.495(a)(1). To qualify as a "potentially liable operator," the coal mine operator must satisfy several criteria. Among other requirements, "[t]he miner's disability or death [must have arisen] at least in part out of employment in or around a mine or other facility during a period when the mine or facility was operated by such operator," 20 C.F.R. § 725.494(a), and the miner must have been "employed by the operator . . . for a cumulative period of not less than one year," 20 C.F.R. § 725.494(c). Of particular significance in this case, the operator must also be financially "capable of assuming its liability for the payment of continuing benefits." 20 C.F.R. § 725.494(e). An operator will be deemed financially capable of assuming liability if:

(1) The operator obtained a policy or contract of insurance under [the Act and regulations] that covers the claim, except that such policy shall not be considered sufficient to establish the operator's capability of assuming liability if the insurance company has been declared insolvent and its obligations for the claim are not otherwise guaranteed;

(2) The operator qualified as a self-insurer under [the Act and regulations] during the period in which the miner was last employed by the operator, provided that the operator still qualifies as a self-insurer or the security given by the operator [required by the regulations] is sufficient to secure the payment of benefits in the event the claim is awarded; or

(3) The operator possesses sufficient assets to secure the payment of benefits in the event the claim is awarded. . . .

20 C.F.R. § 725.494(e)(1)-(3).

When a miner files a claim for black lung benefits, the district director obtains and reviews the miner's employment history and identifies the "operators potentially liable for

4

the payment of benefits." 20 C.F.R. § 725.407(b). The district director then notifies the operators and their insurance carriers of the claim and affords them an opportunity to accept or contest their status and submit evidence on the issue. *See* 20 C.F.R. §§ 725.407(b), 725.408(a)(1), 725.408(b)(1). The district director thereafter issues a "schedule for the submission of additional evidence." 20 C.F.R. § 725.410(a). The schedule must "contain the district director's designation of a responsible operator liable for the payment of benefits." 20 C.F.R. § 725.410(a)(3). If the district director does not name the miner's most recent employer as the responsible operator, he must explain his decision. *See id.*; 20 C.F.R. § 725.495(d). And if it is because the most recent employer is not financially capable of assuming liability for the claim, the district director must include in the record a statement that a search of the Office of Workers' Compensation files revealed "no record of insurance coverage for that employer, or of authorization to self-insure, that meets the conditions of § 725.494(e)(1) or (e)(2)." 20 C.F.R. § 725.495(d). "Such a statement shall be prima facie evidence that the most recent employer is not financially capable of assuming its liability for a claim." *Id.* After consideration of all of the evidence submitted, the district director issues the proposed decision and order reflecting, *inter alia*, "the district director's final designation of the responsible operator liable for the payment of benefits." 20 C.F.R. § 725.418(d).

The "responsible operator" designated by the district director may request a revision of the proposed decision or request a hearing before an ALJ. *See* 20 C.F.R. § 725.419(a). Once the claim has been referred to the Office of Administrative Law Judges for a hearing, the district director is precluded from changing the designation of the responsible operator.

5

At the hearing, the Director bears the "burden of proving that the responsible operator initially found liable for the payment of benefits . . . (the 'designated responsible operator') is a potentially liable operator" meeting the § 725.494 criteria. 20 C.F.R. § 725.495(b). If the Director is successful, the burden then shifts to the responsible operator to show "[t]hat it is not the potentially liable operator that most recently employed the miner" or that it "does not possess sufficient assets to secure the payment of [the] benefits" awarded. 20 C.F.R. § 725.495(c).[1]

## II.

Hale filed this claim for black lung benefits on October 29, 2018. His most recent coal mine employer was Chestnut Ridge Mining Company ("Chestnut Ridge"), where he worked from 1984 to 1985. Chestnut Ridge was self-insured through the Virginia Coal Producers Self-Insurance Association ("VCP"). But both Chestnut Ridge and VCP are insolvent and incapable of paying benefits to Hale. Hale's next most recent employer was Three H Coal, where he worked from 1978 to 1984. Three H Coal was covered by an insurance policy issued by Old Republic. It is undisputed that Three H Coal was properly determined to be a "potentially liable operator" under the regulations.

The district director designated Three H Coal the responsible operator. Although Chestnut Ridge was Hale's most recent employer, the district director explained that it had no record of insurance coverage for Chestnut Ridge or authorization for Chestnut Ridge to

---

[1] If there is no operator responsible for the payment of benefits, or the designated responsible operator prevails at the hearing, the Black Lung Disability Trust Fund assumes liability for the claim.

6

self-insure that met the requirements of 20 C.F.R. §725.494. The district director also rejected Three H Coal's claim that Chestnut Ridge should nonetheless have been designated the responsible operator because Chestnut Ridge's and VCP's liability was guaranteed by two state-created guaranty funds—the Virginia Property and Casualty Insurance Guaranty Association ("VPCIGA") and the Virginia Uninsured Employer's Fund ("VUEF"). Three H Coal requested a hearing.

On September 21, 2021, the ALJ issued a Decision and Order affirming the designation of Three H Coal as the responsible operator and awarding benefits to Hale. The ALJ rejected Three H Coal's argument that the district director erred by not naming Chestnut Ridge the responsible operator and notifying VPCIGA and VCP of the claim because: (1) the VPCIGA only covers claims that result from the insolvency of a member *insurer*, not a self-insured association; and (2) the VUEF only guarantees the payment of *state* workers' compensation benefits awarded under the Virginia Workers' Compensation Act, not *federal* black lung benefits awarded under the BLBA. Because the district director had correctly determined that neither guaranty fund would cover the payment of Hale's claim for black lung benefits and, therefore, that Chestnut Ridge was not financially capable of assuming liability for the claim, the ALJ held that Three H Coal—the next most recent "potentially liable operator"—was properly designated the responsible operator. The BRB affirmed and this appeal followed.

III.

On appeal, Three H Coal presses its argument that the district director erred in designating it as the responsible operator because Chestnut Ridge's and VCP's liability was

7

guaranteed by the VPCIGA and VUEF.  In the alternative, Three H Coal asserts that, if the Virginia guaranty funds do *not* guarantee the payment of Hale's black lung benefits, their statutory limitations violate the Supremacy Clause and the Takings Clause of the United States Constitution.  Because the issues before us are ones of law, our review is *de novo*. *See Sea "B" Mining Co. v. Addison*, 831 F.3d 244, 252 (4th Cir. 2016) ("We evaluate the legal conclusions of the Board and ALJ de novo but defer to the ALJ's factual findings if supported by substantial evidence."); *Armco, Inc. v. Martin*, 277 F.3d 468, 473 (4th Cir. 2002) ( "Because resolution of who is the responsible operator is determined in this case by statutory interpretation, our review is plenary.").

A.

We begin with Three H Coal's argument that the district director erred in designating it as the responsible operator because Chestnut Ridge's and VCP's liability was guaranteed by the VPCIGA and VUEF.  We disagree.

1.

The VPCIGA was established under Virginia law to "provide prompt payment of covered claims to reduce financial loss to claimants or policyholders resulting from the insolvency of an insurer [and] apportion the cost of this protection among insurers."  Va. Code Ann. § 38.2-1600.  It applies "to all classes of direct insurance written by member insurers" with certain exceptions not applicable here.  Va. Code Ann. § 38.2-1601.  A "[m]ember insurer" includes "any person who (i) writes any class of insurance to which this chapter applies . . . , and (ii) is licensed to transact the business of insurance in the Commonwealth. . . ."  Va. Code Ann. § 38.2-1603.  "All insurance companies that conduct

8

business in Virginia are required by state law to join, and the association is funded by mandatory contributions from those members." *RB&F Coal, Inc. v. Mullins*, 842 F.3d 279, 282 (4th Cir. 2016); *see* Va. Code Ann. § 38.2-1604 (providing that "member insurers" must "remain members of the Association as a condition of their license to transact the business of insurance in this Commonwealth"). "When a member insurer becomes insolvent, the VPCIGA takes on liability for some, but not all, of its obligations." *Mullins*, 842 F.3d at 282 (citing Va. Code Ann. § 38.2-1606(A)(1)). The VPCIGA will only pay a "covered claim," which is defined as "an unpaid claim . . . submitted by a claimant, that . . . arises out of and is within the coverage and is subject to the applicable limits of a policy covered by this chapter and issued by an *insurer* who has been declared to be an *insolvent insurer*." Va. Code Ann. § 38.2-1603 (emphasis added). An "insolvent insurer" is "an insurer that is (i) licensed to transact the business of insurance in the Commonwealth either at the time the policy was issued, when the obligation with respect to the covered claim was assumed, or when the insured loss occurred and (ii) against whom an order of liquidation with a finding of insolvency has been entered after July 1, 1987, by a court of competent jurisdiction. . . ." *Id.*

VCP is a group self-insurance association authorized pursuant to the Virginia Workers' Compensation Act to assure the payment of Virginia workers' compensation claims. It is not an "insurer," "member insurer," or "insolvent insurer" under the VPCIGA. Hale's claim for black lung benefits against Chestnut Ridge and VCP is not a "covered claim" under the VPCIGA. It does not fall within the "limits of a policy covered by" the VPCIGA, nor a policy "issued by an insurer who has been declared to be an insolvent

9

insurer." Va. Code Ann. § 38.2-1603; *see Farmers Ins. Exch. v. Enter. Leasing Co.*, 708 S.E.2d 852, 856-57 (Va. 2011) (noting "that there is a distinction between insurance companies and self-insurers"); *Yellow Cab Co. of Va., Inc. v. Adinolfi*, 134 S.E.2d 308, 310-11 (Va. 1964) (same). As the *Farmers* court noted, insurance requires "the existence of a contract between insurer and insured. With self-insurance, there is neither an insured nor an insurer. In fact, self-insurance does not involve the transfer of a risk of loss, but rather a retention of that risk, making it the antithesis of insurance." *Farmers*, 708 S.E.2d at 857 (cleaned up). It is an "assurance" that a claim will be paid, not a policy of insurance issued by an insurer. *Id.*

Three H Coal argues that VCP's license to provide group self-insurance under the Virginia Workers' Compensation Act should nonetheless suffice to establish VCP as an "insurer" for purposes of the VPCIGA. We are unpersuaded.

Under the Virginia Workers' Compensation Act, a coal mine operator may secure its liability for the payment of state workers' compensation benefits by purchasing insurance from "an insurer authorized to transact the business of workers' compensation insurance" in Virginia, "[r]eceiving a certificate . . . from the Workers' Compensation Commission authorizing such employer to be an individual self-insurer," or "[b]eing a member in good standing of a group self-insurance association licensed by the State Corporation Commission." Va. Code Ann. § 65.2-801(A). Thus, the Workers' Compensation Act also recognizes the distinction between insurers that are "authorized to transact the business of workers' compensation insurance in" Virginia, Va. Code Ann. § 65.2-801(A)(1), and group self-insurance associations that are "licensed by the State Corporation Commission as a

10

group self-insurance association and permitted to enter into agreements to pool their liabilities" for state workers' compensation benefits, Va. Code Ann. § 65.2-802(A). Nowhere does the Virginia Workers' Compensation Act indicate that group self-insurance associations are authorized to transact the business of insurance in Virginia. And, while such group self-insurance associations must pay annual assessments to the State Corporation Commission, *see* Va Code Ann. § 65.2-802(F), there is no requirement that they pay assessments to VPCIGA, *see* Va. Code Ann. § 38.2-1606(A)(3).

As Three H Coal points out, the VPCIGA is to be "liberally construed to provide prompt payment of covered claims in order to reduce financial loss to claimants or policyholders resulting from the insolvency of an *insurer*." *Boyd & Stevenson Coal Co. v. Dir., OWCP*, 407 F.3d 663, 667-69 (4th Cir. 2005) (cleaned up) (emphasis added); Va. Code Ann. § 38.2-1602 (providing that the VPCIGA "shall be liberally construed to effect the purpose under § 38.2-1600"). But VPCIGA's "liberal construction" directive does not grant us license to require VPCIGA to guarantee claims that are plainly outside its purview. Accordingly, we agree with the ALJ and BRB and hold that the VCP was not an "insurer" whose liability was guaranteed under the VPCIGA.[2]

2.

---

[2] Three H's reliance upon the district director's purported admission that VCP would be considered an insurer for purposes of the BLBA also does not avail it. The question before us is whether VCP is an insurer under *state* law for purposes of the VPCIGA, not whether the district director considers VCP to be an insurer for purposes of the BLBA requirements. As explained above, a self-insurance association is not an *insurer* licensed to sell insurance in the state or one covered within the ambit of VPCIGA.

11

The VUEF also does not guarantee payment of Hale's black lung benefits. The VUEF is part of the Virginia Workers' Compensation Act, created "[f]or the purpose of providing funds for compensation benefits awarded against any uninsured or self-insured employer" under the Act and funded by an administrative tax. Va. Code Ann. § 65.2-1201(A). "After an award has been entered against an employer for compensation benefits" under the Act, "and upon finding that the employer has failed to comply with the" insurance or self-insurance requirements of the Act and "is unable to satisfy an award in whole or in part, the Commission shall order the award, or any unpaid balance, to be paid from the [VUEF]." Va. Code Ann. § 65.2-1203(A)(2).

An "award" for purposes of the Virginia Workers' Compensation Act, however, is limited to "the grant or denial of benefits or other relief *under this title* or any rule adopted pursuant thereto." Va. Code Ann. § 65.2-101 (emphasis added); *see Redifer v. Chester*, 720 S.E.2d 66, 69 n.4 (Va. 2012) ("The [VUEF] ensures the payment of compensation benefits owed by an uninsured employer that fails to pay benefits ordered by the Commission."). Accordingly, subject to its other limitations, the VUEF would appear to guarantee the payment of an award issued against an insolvent self-insured association licensed by the Virginia State Corporation Commission. But the VUEF only guarantees the payment of *state* workers' compensation benefits awarded by the Virginia Workers' Compensation Commission. It does not guarantee the payment of an award of federal black lung benefits under the BLBA. Accordingly, we hold that the ALJ and BRB also correctly concluded that the VUEF did not guarantee VCP's liability for Hale's black lung benefits.

3.

12

Three H Coal also argues that the district director erred in failing to designate Chestnut Ridge a potentially liable operator, notify VPCIGA and VUEF, and place the burden upon the state to appear and dispute the funds' liability.  In support, Three H Coal relies primarily upon 20 C.F.R. § 725.609 of the black lung regulations.

Section 725.609 provides that, "[i]n any case in which an award of benefits creates obligations on the part of an operator or insurer that may be enforced under the provisions of this subpart, such obligations may also be enforced, in the discretion of the Secretary or district director . . . [a]gainst any other person who has assumed or succeeded to the obligations of the operator or insurer by operation of any state or federal law, or by any other means."  20 C.F.R. § 725.609(e).  The Preamble to the regulations explains that:

> paragraph (e) is a catch-all provision designed to put all parties on notice that the Department can take full advantage of any other applicable federal or state law.  For example, the Department has encountered a number of cases in which the responsible operator has gone out of business and its insurer has been declared insolvent by the state in which it was established.  In such a case, the Department and the award beneficiary *may* collect from a state insurance guaranty association *where state law requires such an association to assume the insurer's liability*.

62 Fed. Reg. 3338, 3369 (Jan. 22, 1997) (emphasis added).

But as we have explained, Virginia state law does *not* require the VPCIGA or the VUEF to assume liability for the obligations of Chestnut Ridge or VCP.  *Cf. Mullins*, 842 F.3d at 286 (noting that "the mere existence of a state guaranty company does not then impose liability on the guaranty company for all of the state's insolvent insurance companies' BLBA claims").  Because the district director did not err in concluding that state law did not require the VPCIGA or the VUEF to assume payment of Hale's black lung

13

claim, the district director likewise did not err or abuse his discretion in failing to put the funds on notice of the claim.[3]

B.

The Supremacy Clause establishes that the Constitution and "the Laws of the United States" are "the supreme Law of the Land. . ., any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. art. VI, cl. 2.  "Practically speaking, this means that federal law preempts—or bars—claims under state law that either interfere with or are contrary to federal law."  *Guthrie v. PHH Mortgage Corp.*, 79 F.4th 328, 336 (4th Cir. 2023).  However, "we must not presume federal law preempts state law."  *Id.*  On the contrary, we begin "with the basic assumption that Congress did not intend to displace state law."  *Id.* (cleaned up).  The assumption may be overcome in limited ways.  Congress may expressly preempt certain state laws. *See id.*  Alternatively, "federal law may so thoroughly occupy a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it."  *Id.* (cleaned up).  "Finally, compliance with both federal and state  regulations may be a physical impossibility," resulting in direct conflict.

---

[3] Three H Coal additionally complains that the district director ran afoul of the *Chenery* doctrine by offering varying reasons for why it designated Three H Coal as the "responsible operator" under the regulations.  *See American Energy, LLC v. Dir. OWCP*, 106 F.4th 319, 335 (4th Cir. 2024) ("Affirming the Board's decision on an alternative ground not actually relied upon by the Board is prohibited under the *Chenery* doctrine.") (cleaned up) (citing *SEC v. Chenery Corp.*, 318 U.S. 80 (1943)).  We can summarily reject this argument.  The district director proceeded in accordance with the BLBA and regulations before ultimately designating Three H Coal as the responsible operator.  The district director was not prohibited from offering alternative reasons for this determination, even if some were ultimately abandoned or rejected.  And we are not affirming the BRB's decision based upon a ground not relied upon by the BRB.

14

*Id.* at 336-37 (cleaned up). Or "state law may stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 337 (cleaned up).

Three H Coal argues that the BLBA preempts the VPCIGA's and VUEF's limitations on the types of claims that the state funds guarantee. But the argument is grounded in the mere fact that the BLBA requires that any commercial insurance policy issued to a coal mine operator include "a provision to pay benefits required under [the BLBA], notwithstanding the provisions of the State workmen's compensation law which may provide for lesser payments." 30 U.S.C. § 933(b)(1); 20 C.F.R. § 726.204(a) (same); 20 C.F.R. § 726.203(a) (setting forth the required endorsement).

The statutory limitations contained within the VPCIGA and VUEF do not conflict with or otherwise interfere with BLBA's requirements. The BLBA requires coal mine operators to secure its liability for the payment of federal black lung benefits via a commercial insurance policy or self-insurance. *See* 30 U.S.C. § 933(a). It does not address state insurance requirements—other than to make clear that a coal mine operator's *federal* requirements are unaffected by state requirements that may impose a lesser liability for state workers' compensation claims. Moreover, state-created guaranty funds are not insurance companies or self-insurers, and there is nothing in the BLBA that requires states to establish such funds to pay federal black lung claims or to require such funds, if established, to guarantee the payment of black lung claims against insolvent coal mine operators and their insurers. *Cf. Mullins*, 842 F.3d at 283 (affirming BRB's determination that "state-run insurance guaranty associations are not covered by 20 C.F.R. § 726.203(c), which prohibits private insurance carriers from limiting their liability for black lung

15

claims"). On the contrary, the BLBA has its own guaranty fund—the Black Lung Disability Trust Fund—which steps in to pay a claim when no responsible operator exists that is financially capable of assuming liability for the claim. In sum, the BLBA prohibits coal mine operators and their insurers from limiting their federal black lung liability coverage based upon lesser state workers' compensation insurance requirements. But there is nothing in the BLBA that preempts or prohibits states from limiting the types and amounts of claims that its state-created guaranty associations will pay.

## C.

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. It "was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). Three H Coal argues that requiring it to pay Hale's black lung benefits amounts to an unconstitutional regulatory taking of its money because Old Republic paid taxes and assessments that funded the state guaranty associations and that "fairness and justice" requires that either the state guaranty funds or the Black Lung Disability Trust Fund assume liability for the claim. We are unpersuaded.

Congress authorized the Secretary to adopt regulations apportioning liability among coal mine operators in cases where a miner has worked for more than one operator that contributed to his illness or death. The BLBA regulations require that the miner's most recent coal mine operator who both employed the miner for at least one year and contributed to his disability or death pay the black lung benefits. In the event the most

16

recent employer is insolvent, the burden falls to the next, most-recent coal mine operator that contributed to the miner's disability or death and is financially capable of assuming its liability. Only if *no* solvent employer with liability for the black lung claim exists does the Black Lung Trust Fund assume liability for the claim. We see nothing unfair or unjust in this regulatory scheme for apportioning liability among coal mine operators for black lung claims that arose from their employment of the miner. The BLBA does not force Three H Coal to bear a financial burden that should be borne instead by the public as a whole; it requires Three H Coal to pay black lung benefits to a prior employee who is totally disabled due, in part, to his employment with Three H Coal. *Cf. West Virginia CWP Fund v. Stacy*, 671 F.3d 378, 387 (4th Cir. 2011) (holding that the Coal Act's "mere imposition of an obligation to pay money does not give rise to a claim under the Takings Clause").

Nor has Old Republic been deprived of any monies that it paid to fund the state guaranty funds. As a condition of writing business in Virginia, insurers are required to pay assessments to the VPCIGA to guaranty the payment of certain types of insurance claims filed against insolvent member insurers, and to pay taxes to fund the payment of certain state workers' compensation claims from the VUEF. Old Republic has not been deprived of the benefit of writing insurance in Virginia and, in appropriate cases, the state guaranty funds will step in to pay claims against insolvent companies. This was not such a case.

IV.

For the foregoing reasons, the petition for review of the decision of the Benefits Review Board is

DENIED.

17